IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

AT JACKSON

SEPTEMBER 1997 SESSION

FILED

October 13, 1997

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| STATE OF TENNESSEE, | ) | |
| | ) | NO. 02C01-9610-CR-00353 |
| Appellee, | ) | |
| | ) | SHELBY COUNTY |
| VS. | ) | |
| | ) | |
| | ) | HON. CHRIS CRAFT, JUDGE |
| STEPHANIE Y. DOWAGIAC, | ) | |
| | ) | (Theft under $500) |
| Appellant. | ) | |

FOR THE APPELLANT:                          FOR THE APPELLEE:


MARK ALBERT MESLER, II                    JOHN KNOX WALKUP
Ballin, Ballin & Fishman, P.C.            Attorney General and Reporter
200 Jefferson Avenue
Suite 1250                                CLINTON J. MORGAN
Memphis, Tennessee 38103                  Assistant Attorney General
                                          450 James Robertson Parkway
                                          Nashville, TN 37243-0493


                                          WILLIAM GIBBONS
                                          District Attorney General


                                          RHEA CLIFT
                                          Assistant District Attorney General
                                          201 Poplar Street
                                          Suite 300
                                          Memphis, Tennessee 38103


OPINION FILED: _____


AFFIRMED


JOE G. RILEY,
JUDGE

## OPINION

Defendant, Stephanie Y. Dowagiac, was convicted by a Shelby County jury of theft of property under $500, a Class A misdemeanor. The trial court deferred imposition of sentence and placed defendant on judicial diversion for eleven (11) months and twenty-nine (29) days. Defendant presents for our review the issues of sufficiency of the evidence and the propriety of comments made by the trial court. We affirm the judgment of the trial court.

## FACTS

Atwood Rawls, an off-duty Memphis police officer, was a security officer for Dillard's department store on the date of the offense, January 2, 1995. He observed defendant take four (4) Perry Ellis vests from a display rack and go into a dressing room. Rawls went to the door of the dressing room and heard a snapping sound like that made when the anti-theft sensors are removed from clothing. Defendant came out of the dressing room carrying only two (2) vests, which she returned to the display rack. When she left the store, the alarm did not sound. Because Rawls could not find the two (2) missing vests or the broken sensors in the dressing room, he searched the pockets of the vests defendant had replaced on the rack. He found two broken sensors and the price tags from the missing vests. He found defendant in the mall. When he asked her about the missing vests, she said she had them underneath her coat. Rawls told her she was under arrest and took her back to Dillard's.

Mary Pickens, also a Memphis police officer, was on patrol at the mall and accompanied Rawls and defendant back to Dillard's. She heard the defendant say that she had popped the sensors with her fingers, and that she had one vest for herself and one for her boyfriend.

Defendant married her boyfriend prior to trial. He testified that he and the

2

defendant had bought the two vests as Christmas gifts for each other but could not find the receipt. He produced undated Polaroid snapshots showing them unwrapping and wearing their vests with a Christmas tree in the background. He testified the pictures were taken during Christmas 1994. They had both been wearing these vests on January 2, 1995, and as she dropped him off at work, he had given her his vest to wear due to the cold. She drove away wearing both vests according to the husband's testimony.

Defendant also testified that she and her husband had given each other Perry Ellis vests for Christmas 1994. As she dropped him off at work the day of her arrest, he had given her his vest which she wore over her vest. She went to Dillard's to look for washable vests. She tried on two vests and replaced them on the rack. After leaving Dillard's, she was grabbed by Rawls. She denied confessing to Rawls and Officer Pickens that she took the vests.

## SUFFICIENCY OF THE EVIDENCE

When an accused challenges the sufficiency of the evidence, this court must review the record to determine if the evidence adduced during the trial was sufficient "to support the findings by the trier of fact of guilt beyond a reasonable doubt." Tenn. R. App. P. 13(e). This rule is applicable to findings of guilt predicated upon direct evidence, circumstantial evidence or a combination of direct and circumstantial evidence. State v. Brewer, 932 S.W.2d 1,19 (Tenn. Crim. App. 1996).

In determining the sufficiency of the evidence, this court does not reweigh or reevaluate the evidence. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). Nor may this court substitute its inferences for those drawn by the trier of fact from circumstantial evidence. Liakas v. State, 199 Tenn. 298, 305, 286 S.W.2d 856, 859 (1956). To the contrary, this court is required to afford the state the strongest legitimate view of the evidence contained in the record as well as all reasonable and legitimate inferences which may be drawn from the evidence. State v. Tuttle, 914

S.W.2d 926, 932 (Tenn. Crim. App.1995).

Questions concerning the credibility of the witnesses, the weight and value to be given the evidence as well as all factual issues raised by the evidence are resolved by the trier of fact, not this court. Id. In State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973), the Tennessee Supreme Court stated, "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State."

Because a verdict of guilt removes the presumption of innocence and replaces it with a presumption of guilt, the accused has the burden in this court of illustrating why the evidence is insufficient to support the verdict returned by the trier of fact. State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982); State v. Grace, 493 S.W.2d at 476.

The jury obviously accredited the testimony of the state's witnesses and rejected the version given by the defendant and her husband. The state's proof certainly was sufficient to support the jury's guilty verdict of theft of property under $500. This issue is without merit.

## TRIAL COURT STATEMENTS

Defendant complains that she was prejudiced by comments made by the trial judge. The motion for new trial simply alleges: "The trial judge's conduct and statements toward defense witnesses constitute improper comments on the evidence." The only comments actually mentioned at the motion for new trial related to defendant's requests for a lie-detector test. On appeal defendant alleges other examples. Any alleged errors as to these other examples have been waived for failure to specifically raise them in the motion for new trial. See Tenn. R. App. P. 3(e); State v. Gauldin, 737 S.W.2d 795, 798 (Tenn. Crim. App. 1987). However, our review of these comments does not reveal any reversible error.

The comments before us on appeal consist of the trial court's warning

4

defendant to refrain from referring to her alleged offer to take a "lie-detector test." Defendant claims these comments constituted an improper comment on the weight of the evidence. The challenged exchange consisted of the following:

> [DEFENDANT]: Yes, she [Pickens] said--she said, "How did you get those sensors off:" And I said, "You've got the wrong person." I said, "We can clear all this up by giving me a lie-detector test." I said, "I'll take a lie-detector test. Just please get someone in here right now and [I'll] take a lie-detector test." And when I said that--
>
> THE COURT: Ms. Dowagiac, if you mention the lie detector again, I'm going to find you in contempt of court. Do not mention that word again. All right, ma'am?

. . . .

When defense counsel attempted to resume his direct examination, the defendant referred to the subject again: "Well, right before she--when I said that last statement that I'm not supposed to say--." The court reminded her again not to refer to anything having to do with this subject.

The trial judge at the motion for new trial explained that he was presented with an emergency situation of the defendant's making and felt from the look on her face and her attitude that she knew it was improper but did it anyway. We give great deference to the trial judge who, unlike this Court, was able to observe the demeanor of the witness.

An offer to take a polygraph test is not admissible in a criminal proceeding. State v. Campbell, 904 S.W.2d 608, 614-615 (Tenn. Crim. App. 1995). The trial judge had to act immediately. While the trial court should not have threatened the witness with contempt of court in the presence of the jury, we find that the trial court's admonition did not affect the results of this trial. Tenn. R. App. P. 36(b). This issue is without merit.

## CONCLUSION

The judgment of the trial court is affirmed in all respects.

5

_____**JOE G. RILEY, JUDGE**

**CONCUR:**

_____
**JOE B. JONES, PRESIDING JUDGE**

_____
**DAVID H. WELLES, JUDGE**