IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

AT JACKSON

FEBRUARY 1999 SESSION



FILED

**March 24, 1999**

**Cecil Crowson, Jr.**
**Appellate Court Clerk**

| | | |
|---|---|---|
| STATE OF TENNESSEE, | ) | C.C.A. No. 02C01-9807-CC-00230 |
| | ) | |
| Appellee, | ) | Carroll County |
| | ) | |
| v. | ) | Honorable C. Creed McGinley, Judge |
| | ) | |
| ROBERT THOMAS MORTON, | ) | (Aggravated Burglary, Arson, |
| | ) |  Setting Fire to Personal Property) |
| Appellant. | ) | |

FOR THE APPELLANT:

Billy R. Roe, Jr.
Assistant District Public Defender
117 North Forrest Avenue
Camden, TN  38320

FOR THE APPELLEE:

John Knox Walkup
Attorney General & Reporter
425 Fifth Avenue North
Nashville, TN  37243-0493

Clinton J. Morgan
Assistant Attorney General
425 Fifth Avenue North
Nashville, TN  37243-0493

G. Robert Radford
District Attorney General
111 Church Street
P. O. Box 686
Huntingdon, TN  38344-0686

Eleanor Cahill
Assistant District Attorney General
111 Church Street
P. O. Box 686
Huntingdon, TN  38344-0686

OPINION FILED: _____

AFFIRMED

JAMES C. BEASLEY, SR., SPECIAL JUDGE

**O P I N I O N**

The appellant, Robert Thomas Morton, was found guilty by a Carroll County jury of aggravated burglary, arson, and two counts of setting fire to personal property. In this appeal as of right, the appellant challenges the sufficiency of the convicting evidence.

This case involves the burglary and burning of a house trailer located at 105 Green Valley Road in Huntingdon, Tennessee. The trailer was owned by Charles and Irene Pinkley who lived next door. The trailer was rented by Maria Morton, the appellant's estranged wife, and Kanya Knight. The two women, along with Mrs. Morton's two children, had been living in the trailer for a "couple of months" at the time of the fire.

On November 21, 1997 at approximately 8 p.m., as Sandra Leigh Sherrod was leaving the Pinkley residence she noticed a flicker of light in a window of the trailer. She walked closer to the trailer and saw a curtain burning. She alerted her aunt, Mrs. Pinkley, and they called 911 and Mrs. Morton who was visiting nearby.

Ms. Sherrod testified that, after calling 911, she ran back to the trailer and attempted to move Kanya Knight's car but was unable to do so because the car was locked. As she walked back across the yard, she saw the appellant and a girl drive by in a blue or gray car. After the fire trucks arrived, she saw the appellant and the girl drive by again.

Michelle Leigh Davis testified that she was with the appellant on the day of the fire. She drove him to the police stations in Bruceton and Hollow Rock. She thought he was trying to get police assistance in recovering some personal items from his wife. Later, they drove to the trailer where the appellant requested her to knock on the door and ask for Maria or Kanya. She did so, but no one came to the door. Late that afternoon, she dropped appellant off at his home in Bruceton. An hour or so later, she picked the appellant up and drove him to the intersection of Green Valley and Grooms Road. The appellant got out of the car at this point after telling her "that he was getting some clothes or something, or see if the cops had showed up out there yet." Sometime later, she

returned to the intersection and found the appellant waiting there. She testified that the appellant told her he broke the window because he wanted to get some of his belongings. He could not get his things, but his fingerprints were on the window, so he took a lighter and burned the curtain. Ms. Davis and the appellant then drove by the burning trailer twice before leaving the area.

Robert Pollard, an investigator with the State Fire Marshall's Office, testified that the fire's point of origin was the center of the trailer in the area of the windows. He found no evidence of an accelerate or an electrical involvement. The investigator took a statement from the appellant who admitted being let off at the stop sign at the intersection of Grooms and Green Valley and walking up the street to see if the "law" or his wife were at his wife's house. He said this only took a couple of minutes and then he returned to the stop sign and met Michelle. He denied setting the fire.

It was established that the site of the burned trailer was less than one-fourth of a mile from the stop sign at the intersection of Grooms and Green Valley.

Irene Pinkley testified that she and her husband owned the subject trailer. Maria Morton, her two children, and Kanya Knight were living there. Late in the afternoon on November 21, Mrs. Pinkley saw the appellant sitting in a car in Maria's driveway and a woman knocking on Maria's door. The appellant and the woman left, but drove by later while the trailer was burning.

Kanya Knight testified that her personal property, including clothes, jewelry, furniture and dishes, was in the trailer at the time of the fire. While the trailer was burning, she saw the appellant and a woman drive by twice in a "little gray-blue looking" car.

Joyce Maria Self testified that on November 21, 1997 she was married to, but separated from, the appellant. At the time of trial, they were divorced. She lived in the trailer on Green Valley Road with her two children and Kanya Knight. She said her

husband had never lived in that trailer and denied that he had any personal items there. There was an ongoing dispute about the ownership of a washing machine which the witness had brought from her former residence. She claimed it had been given to her by the son-in-law of the appellant's sister; however, the sister claimed that it still belonged to her.

Appellant's former wife further testified that everything she owned was lost in the fire, including her dog, clothes, pictures, and furniture. She stated that while she and her two children were standing by the road crying, the appellant drove by and "waved a peace sign."

Kay Darnell testified that her brother, the appellant, and his former wife, Maria, had previously lived in a family-owned trailer. She stated that when Maria moved out, "she took stuff that was mine and stuff that was my brother's." Ms. Darnell had contacted the police for advice as to the steps she should take in recovering her property. On cross-examination, the witness admitted she had never been in the trailer on Green Valley Road and could not definitely say that it contained any of her brother's property.

When an appellant challenges the sufficiency of the evidence, this Court must determine whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); Tenn. R. App. P. 13(e). The rule governing our review of the facts is applicable to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of direct and circumstantial evidence. State v. Matthews, 805 S.W.2d 776 (Tenn. Crim. App. 1990) (citing State v. Brown, 551 S.W.2d 329 (Tenn. 1977)).

Questions concerning the credibility of witnesses, the weight and value to be given to the evidence, as well as factual issues raised by the evidence are resolved by the trier of fact, not this Court. State v. Cabbage, 571 S.W.2d 832 (Tenn. 1978). A guilty verdict

rendered by the jury and approved by the trial judge accredits the testimony of the witnesses for the State, and a presumption of guilt replaces the presumption of innocence. State v. Grace, 493 S.W.2d 474 (Tenn. 1973). On appeal, the convicted defendant has the burden of demonstrating that the evidence is insufficient. State v. Tuggle, 639 S.W.2d 913 (Tenn. 1982).

In his challenge to the sufficiency of the evidence, the appellant does not contest the proof of the essential elements of these crimes, but claims that the evidence is insufficient to establish that he is the person who committed them. He argues that the jury disregarded every possible alternative in accepting the State's theory, even though logic would dictate that the appellant did not burn the trailer. In support of this claim, the appellant alludes to the opportunity of his estranged wife to frame him and claims that he would have let his dog out before burning the trailer, would not have burned his sister's washing machine, and would never have driven by the trailer during the fire. Finally, the appellant questions why would he have committed these crimes knowing he would be the primary suspect.

The record reflects that these alternatives and this reasoning was presented to and rejected by the jury and the trial judge. In approving the jury's verdict and overruling the motion for a new trial, the trial judge described the proof in this case as absolutely overwhelming.

For its consideration, the jury had proof of the appellant's acts and conduct at and near the scene immediately before and shortly after the burglary and fire. Most damaging, however, was the unimpeached testimony of Michelle Davis relating the admissions made to her by the appellant. By its verdict, the jury obviously credited her testimony.

Great weight is given to the result reached by the jury in a criminal trial, and the appellant has the burden of overcoming the presumption of guilt. State v. Matthews, 888 S.W.2d 446 (Tenn. Crim. App. 1993).

In our view, the appellant has failed to carry his burden of proof in demonstrating that the evidence is insufficient. Accordingly, we must and do affirm the judgments of conviction.

-6-

_____
JAMES C. BEASLEY, SR., SPECIAL JUDGE

CONCUR:


_____
JOHN H. PEAY, JUDGE


_____
JOE G. RILEY, JUDGE