STATE of Tennessee, Petitioner,

v.

Clifford L. GRACE, Respondent.

Supreme Court of Tennessee.

April 16, 1973.

David M. Pack, Atty. Gen., C. Hayes Cooney, Asst. Atty. Gen., Nashville, for petitioner.

William C. Wilson, Nashville, for respondent.

## OPINION

CHATTIN, Justice.

Respondent was convicted of passing a worthless check in the amount of $65.00 and sentenced to eleven months and twenty-nine days imprisonment.

The Court of Criminal Appeals reversed and remanded the case on the ground the evidence preponderated against the verdict of the jury. We granted certiorari.

William Adcock, an employee of the Westgate Food Town Market, testified on the evening of September 4, 1970, a man came to his check-out counter and asked him to cash a personal check payable to the Market in the amount of $65.00 and signed "Clifford L. Grace." He requested the man place his telephone number and address on the back of the check and gave him the $65.00.

Adcock identified the check. After the check was returned unpaid, he went to the Metro Police Department and looked at mug shots and identified Grace from a group of pictures.

Adcock also identified Grace in the General Sessions Court on October 16, 1970. He again identified him at the trial. He testified Grace looked the same as he did at the Market when he cashed the check, except he had grown a beard.

Ernest Pyle, a Metro Police Detective, testified Adcock, in his presence at the police station, identified Grace from a collection of eight or ten photographs. He testi-fied other worthless checks had come to his attention signed "Clifford Grace" and this was the first case anyone had attempted to make against him.

James Seigenthaler, a special investigator for the Commerce Union Bank on which the check was drawn, testified the check was written on an account bearing the number of an account listed to Claudia Jackson; and that no one but Claudia Jackson was authorized to draw on that account.

Harold Hutchison, Manager of the Westgate Food Market, testified the check was never paid. He, also, testified he and Adcock appeared in the General Sessions Court in connection with the case and Adcock identified Grace from a large group of people in the courtroom.

Grace testified on October 16, 1970, he appeared with his Attorney, Charles Brown, at the courthouse and he, Brown, Adcock and Hutchison discussed the check; that Adcock could not identify him; and that it was agreed the case would not be prosecuted and he left. He stated he was later arrested on a warrant for failure to appear in court and was then indicted.

He stated he was arrested in September, 1970, on this and about nineteen other bad check cases.

Grace and other witnesses testified in regard to an alibi. The Court of Criminal Appeals considered that testimony as unpersuasive. Since this testimony did not affect the Court of Criminal Appeals' decision, it is unnecessary to restate it.

Charles Brown, an Attorney, testified in behalf of Grace. His testimony was in part as follows:

"Well, he came by the office and had a friend with him. I didn't recognize him, to be perfectly frank with you, but of the way he has let his hair grow and beard grow, and so we came on over to the court and they called the case and we announced that we was present, and of course then they take their recess, and

we had some discussion with the Attorney General down there at the time, I did. I discussed it with him and he denied that he wrote the check. He just emphatically denied it was his check, and we had other discussions, and the fact is we came outside the courtroom and I believe it was that man sitting there. It was a small bald-headed man, and discussed it, and this man admitted that this is not the same fellow that signed the check, or someone did, and so we went back in and talked it over with the Attorney General and the Attorney General agreed to take a nolle in the case. So I left. That was it."

On cross examination, evidently referring to either Hutchison or Adcock, he said during the discussion it was said: "We'll drop it if he'll pay it off, and I said I can't advise him to pay it off. He says he did not write it."

Hutchison was recalled to rebut the testimony of Brown. Hutchison was asked whether he "ever made any offer to accept restitution" with Brown in this case. His reply was that he did not remember any such conversation and did not have the authority to make such an offer of restitution.

He, also, stated he did not remember any such conversation between Adcock, Brown and himself.

Stan Baron, an employee in the Davidson County Criminal Court Clerk's office, who testified the warrant involved herein bore his handwriting and showed the following notations:

1. The case was set for hearing on October 16, 1970, in General Sessions Court but was continued until November 6, 1970, and a subpoena issued.

2. On November 6, 1970, a conditional forfeiture was taken on Grace's bond for nonappearance on that day.

3. On December 18, 1970, said forfeiture was set aside and the case bound over to the grand jury.

He further stated a nolle prosequi had not been taken or entered on the original warrant.

In reversing the trial court the Court of Criminal Appeals said:

"As we examine Mr. Hutchison's rebuttal testimony we are impressed with the fact that it falls short of a denial of Lawyer Brown's testimony, and fails to rebut it. Hutchison said he did not remember any such conversation about which defendant's Attorney testified. Hutchison was asked the direct question by the District Attorney: 'Did you ever make any offer to accept restitution in the case with Mr. Brown?' In answer to that question he did not give an emphatic 'NO' but on the other hand he gave an evasive answer when he said:

"'I don't have any authority to. I leave that up to the DA. Whatever he does on this matter is his business. I don't run the DA's office, and I don't have the authority to accept anything once a warrant is taken out on a check.'"

█ Neither this Court, nor the Court of Criminal Appeals, is free to re-evaluate the evidence as it pleases. A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State. A verdict against the defendant removes the presumption of innocence and raises a presumption of guilt upon appeal. The defendant has the burden upon appeal of showing that the evidence preponderates against the verdict in favor of his innocence.

McBee v. State, 213 Tenn. 15, 372 S.W. 2d 173 (1963).

"In reviewing the record on appeal from a conviction, it is the law of this State 'that the credibility of the witnesses and the conflicts in their testimony have been settled by the verdict of the jury which has been approved by the

trial court.'"  Holt v. State, 210 Tenn. 188, 357 S.W.2d 57 (1962).

■ It is common knowledge that a prosecutor cannot settle a case after an arrest on a criminal warrant without the approval of the District Attorney General and the trial judge.  Evidently that was what Hutchison was referring to when he said he had no authority to make an offer of settlement.

Moreover, whether he told Brown he would drop the case on payment of the amount of the check and costs was immaterial on the issue of the guilt or innocence of Grace.

■ We are of the opinion Grace has failed to carry the burden of showing the evidence preponderates against the verdict of the jury and in favor of his innocence.

The judgment of the Court of Criminal Appeals is reversed and the judgment of the trial court is affirmed.

DYER, C. J., HUMPHREYS and Mc-CANLESS, JJ., and WILSON, Special Justice, concur.