**IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE**

**AT NASHVILLE**

**JANUARY SESSION, 1998**

FILED

March 18, 1998

Cecil W. Crowson
Appellate Court Clerk

| | | |
|---|---|---|
| **STATE OF TENNESSEE,** | ) | **C.C.A. NO. 01C01-9705-CC-00190** |
| | ) | |
| Appellee, | ) | |
| | ) | |
| | ) | **WILLIAMSON COUNTY** |
| **VS.** | ) | |
| | ) | **HON. DONALD P. HARRIS** |
| **MARY SCHWARTZ,** | ) | **JUDGE** |
| | ) | |
| Appellant. | ) | (DUI) |

**ON APPEAL FROM THE JUDGMENT OF THE
CIRCUIT COURT OF WILLIAMSON COUNTY**

FOR THE APPELLANT:

LARRY D. DROLSUM
Assistant Public Defender
407 C Main Street
P.O. Box 68
Franklin, TN 37065-0068

FOR THE APPELLEE:

JOHN KNOX WALKUP
Attorney General and Reporter

RUTH A. THOMPSON
Assistant Attorney General
425 5th Avenue North
Nashville, TN 37243

JOSEPH D. BAUGH, JR.
District Attorney General

JOHN BARRINGER
Assistant District Attorney General
P.O. Box 937
Franklin, TN 37065-0937

OPINION FILED _____

AFFIRMED

DAVID H. WELLES, JUDGE

# OPINION

The Defendant, Mary Schwartz, appeals as of right pursuant to Rule 3 of the Tennessee Rules of Appellate Procedure. She was convicted at a bench trial of driving under the influence of an intoxicant ("DUI").[1] The trial court sentenced her to thirty days in the county jail, all suspended except for forty-eight hours, and eleven months and twenty-nine days of probation. The trial court also imposed a fine of three hundred fifty dollars ($350), ordered the Defendant to attend alcohol safety school, and revoked her driver's license for one year.[2] In this appeal, the Defendant argues that the evidence was legally insufficient to support her conviction. After reviewing the record, we conclude that the Defendant's issue lacks merit. Accordingly, we affirm the judgment of the trial court.

The State's proof at trial consisted of the testimony of two officers of the Williamson County Sheriff's Department. Detective Barry Kincaid testified that he had been a police officer for ten years and had received specialized training and certification in DUI detection. At approximately 11:40 p.m. on the night of September 14, 1995, Kincaid was driving his marked patrol car south on Highway 431. He was heading home because his shift had recently ended. He observed a vehicle, also traveling south on Highway 431, veer over the center line twice. In addition, the vehicle was traveling at approximately thirty-five to forty miles per hour (35-40 mph) in a fifty-five mile per hour (55 mph) zone. At this point, Kincaid reset his trip odometer. He followed the vehicle for approximately one more mile,

---

[1] Tenn. Code Ann. § 55-10-401.

[2] The trial court noted that the Defendant would be eligible for a restricted driver's license if employed.

during which distance he observed it cross the center line six additional times. After observing the movements of the vehicle, Kincaid suspected that the driver was potentially intoxicated or asleep at the wheel. He therefore initiated an investigatory stop. The Defendant was the driver of the vehicle.

Detective Kincaid testified that as he approached the Defendant's vehicle, he observed the Defendant placing a peppermint candy in her mouth. He asked the Defendant for her driver's license. According to Kincaid, the Defendant took between two and three minutes to locate her license in her purse. She told him that she had been drinking that night but was not drunk. Kincaid asked her to step out of her vehicle to perform field sobriety tests. Upon exiting the vehicle, the Defendant leaned on her car for support. She continued to lean on her car as Kincaid instructed her regarding the field sobriety tests. During the instructions, the Defendant frequently interrupted Kincaid. She also kept repeating that although she had been drinking, she was not drunk. Her inability to pay full attention to the instructions indicated possible impairment, according to Kincaid.

The Defendant indicated that she was blind in one of her eyes. As a result, Kincaid elected not to perform the horizontal gaze nystagmus ("HGN") test. He showed her how to perform the walk and turn field sobriety test. The test was performed on a level roadway surface along the white fog line at the edge of the road. According to Kincaid, the Defendant missed placing her heel to her toe on every step and repeatedly extended her arms for balance. In addition, she counted nine twice (thereby taking an extra step) before turning around. Kincaid testified that the Defendant did not even attempt to perform the correct turn which

he had instructed her to do. After turning, the Defendant stopped and began talking to him. She then took three steps back along the line, at which point Detective Kincaid stopped the test. He elected not to have the Defendant perform the one-leg stand test.

After the completion of the walk and turn test, Kincaid believed that all the circumstances indicated that the Defendant's driving ability was impaired due to the use of an intoxicant. He placed her under arrest for DUI. The Defendant refused to consent to a blood alcohol content test. At some point, the Defendant told Kincaid that she had started drinking that day around 4:00 or 5:00 p.m. and that "many, many beers [had] passed through [her] today."

On cross-examination, Kincaid admitted that the Defendant had told him she was having marital difficulties. He stated that the Defendant did appear to be upset during the investigatory stop. Kincaid testified that although the Defendant was driving well below the speed limit, her speed did not fluctuate greatly during the time he followed her. He also admitted that he became aggravated with the Defendant because of her frequent interruptions of his instructions and yelled at her at one point during the instructions.

Deputy Debra Rogers testified to essentially the same facts as Detective Kincaid. Rogers stated that she had been a police officer for just over two years at the time of the Defendant's arrest. At that time she had been trained in DUI detection by field training officers, but had not yet completed the forty-hour certification course administered through the police academy. Rogers arrived on the scene of the stop as Kincaid was giving instructions for the field sobriety

tests, when the Defendant was already out of her vehicle. Upon approaching the Defendant, she noticed an odor of alcohol and peppermint. Rogers testified that the Defendant kept leaning on her car as Detective Kincaid instructed her how to perform the walk and turn test. Rogers confirmed that the Defendant frequently interrupted Kincaid during the instructions.

With regard to the walk and turn test, Rogers stated that the Defendant missed placing her heel to her toe, put her arms out for balance, repeated step nine twice, and did not perform a proper turn. Rogers confirmed that the Defendant paused and began talking after performing the turn.

On cross-examination, Deputy Rogers admitted that Detective Kincaid yelled at the Defendant in an elevated tone at one point during the instructions. Rogers also stated that upon performing an inventory of the Defendant's vehicle, she observed warm, full beer bottles in the trunk.

The Defendant testified in marked contrast to Kincaid and Rogers. She stated that on the night of her arrest, she was emotionally upset. At that time, she and her husband were having marital difficulties. In addition, she had undergone oral surgery approximately a week earlier that left her with partial paralysis resulting in a speech impediment. She had been informed that the paralysis was potentially permanent. On the night of September 14, 1995, given these difficulties, she decided to leave her home near Spring Hill, Tennessee and travel to stay at her sister's home in Nashville. Along the way, she decided not to bother her sister and instead rented a room at the Goose Creek Inn. Once there, she opened a warm beer from the trunk of her vehicle. The beer had been

placed there earlier by her husband. She testified that the warmth of the beer made it taste bad. As a result, she did not drink more than quarter of it. She later opened another beer and poured it over a glass of ice. This solution did not improve the bad taste of the warm beer, and she again drank no more than a quarter of the beer. Shortly thereafter, she decided that she needed to go home and left the motel.

As she drove home, she was stopped by Detective Kincaid. She stated that any abnormalities in her driving were due to the fact that she was smoking and the ashtray in her car was located in a hard-to-reach place. As a result, she had to take her eyes off the road whenever she moved her cigarette to the ashtray. With regard to the peppermint, she testified that she was actually removing the peppermint from her mouth as Detective Kincaid approached her vehicle. Given the speech impediment resulting from her oral surgery, she removed the candy to allow herself to speak more clearly. The Defendant disputed Kincaid's testimony about the length of time it took her to retrieve her driver's license, testifying that it did not take her long to produce the license.

With regard to the field sobriety tests, the Defendant testified that she did not lean on her car throughout the instructional phase. She stated that Detective Kincaid first had her count backwards from ten to one. After that, he began to administer an HGN test, but stopped when she told him that she was blind in one eye. Kincaid then instructed her on the walk and turn test. The Defendant began to explain that she had lingering effects from a previous automobile accident which might impact her performance on the walk and turn test. At this point, Kincaid yelled at the Defendant, using profanity. According to the Defendant, she

"froze up" because of Kincaid's threatening behavior. As a result, she never even attempted to perform the walk and turn test. The Defendant denied having made a statement that "many beers [had] passed through [her]" that night, testifying that she had no more than half a beer during the entire night.

The Defendant also offered the testimony of her husband, Lawrence Schwartz. Lawrence Schwartz confirmed that he and the Defendant had been experiencing marital difficulties and that the Defendant had undergone oral surgery a week before her arrest, resulting in a speech impediment. He also confirmed that the Defendant left their home at approximately 10:00 p.m. on the night in question, intending to travel to her sister's home in Nashville. In addition, he testified that the ashtray in the Defendant's vehicle was located in an odd position, making it very difficult to reach. He stated that he had placed beer in the trunk of the vehicle in anticipation of an upcoming vacation. Furthermore, he testified that he spent the entire day with the Defendant and did not observe her have any alcohol to drink.

The Defendant was indicted on one count of DUI. She waived her right to a jury trial, and her bench trial took place on December 17, 1996. After considering the proof presented at trial, the trial court found the Defendant guilty as charged. She now appeals to this Court.

In her only issue on appeal, the Defendant argues that the evidence was legally insufficient to support her conviction. The Defendant contends that the evidence does not demonstrate that her ability to drive was impaired through the use of intoxicants. She points to her testimony that she consumed only half of

a beer on the night in question. She contends that her testimony was corroborated by her husband, who testified that she did not have any alcohol to drink during the time he was with her, up to 10:00 that night. Moreover, she contests the testimony of Detective Kincaid and Deputy Rogers regarding the field sobriety testing. Finally, she argues that the evidence does not demonstrate that her ability to drive was impaired.

When an accused challenges the sufficiency of the convicting evidence, the standard is whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319 (1979). Questions concerning the credibility of the witnesses, the weight and value to be given the evidence, as well as all factual issues raised by the evidence, are resolved by the trier of fact, not this court. State v. Pappas, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987). Nor may this court reweigh or reevaluate the evidence. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978).

A verdict approved by the trial judge accredits the State's witnesses and resolves all conflicts in favor of the State. State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973). On appeal, the State is entitled to the strongest legitimate view of the evidence and all inferences therefrom. Cabbage, 571 S.W.2d at 835. Because a verdict of guilt removes the presumption of innocence and replaces it with a presumption of guilt, the accused has the burden in this court of illustrating why the evidence is insufficient to support the verdict returned by the trier of fact. State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982); Grace, 493

S.W.2d at 476. Although this case involved a bench trial, the findings of the trial judge who conducted the proceeding carry the same weight as a jury verdict. State v. Tate, 615 S.W.2d 161, 162 (Tenn. Crim. App. 1981).

In the case sub judice, the elements necessary to establish the offense are:

> (1) that the defendant was driving or was in physical control of an automobile or motor driven vehicle;
> (2) that this act occurred on a public road or highway or public street or alley; and,
> (3) that the defendant was under the influence of an intoxicant to the extent her ability to operate an automobile was impaired.

See Tenn. Code Ann. § 55-10-401. The Defendant does not challenge the elements that she was driving an automobile or that she was driving on a public highway. Her complaint focuses solely on the issue of impairment by the use of an intoxicant.

Reviewing the evidence in the light most favorable to the State, we can only conclude that the proof was legally sufficient to support the Defendant's conviction. Detective Kincaid testified that he observed the Defendant's vehicle being operated in an unsafe manner, crossing over the center line of Highway 431 numerous times, including six times within the distance of one mile. According to the State's proof, the Defendant was unsteady on her feet and had an odor of alcohol and peppermint about her. After exiting the vehicle, the Defendant leaned on the car for support. The Defendant performed the walk and turn field sobriety test, the results of which indicated impairment according to Detective Kincaid. His observations of the walk and turn test were corroborated by the testimony of Deputy Rogers. Furthermore, the Defendant's own testimony

at trial indicated that she had consumed alcohol on the night of her arrest. It is well established that to sustain a DUI conviction, the evidence need only demonstrate that the defendant was under the influence of an intoxicant, not that he or she was intoxicated. State v. Lane, 673 S.W.2d 874, 876 (Tenn. Crim. App. 1983); State v. David L. Harrell, C.C.A. No. 03C01-9509-CC-00288, Greene County (Tenn. Crim. App., Knoxville, Sept. 30, 1996).

Of course, the Defendant contested the testimony of Detective Kincaid and Deputy Rogers in many respects. Moreover, she proffered her own explanation for any erratic driving. The resolution of this conflicting testimony, however, was a credibility matter for the trial judge to resolve. He resolved the issue against the Defendant, finding her guilty. From our review of the record, we believe that the evidence was legally sufficient to support the trial court's verdict. This issue lacks merit.

For the reasons set forth in the discussion above, we conclude that the Defendant's issue on appeal lacks merit. We therefore affirm the judgment of the trial court.

_____
DAVID H. WELLES, JUDGE

CONCUR:

_____
JOHN H. PEAY, JUDGE


_____
THOMAS T. WOODALL, JUDGE