IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs April 12, 2005

**STATE OF TENNESSEE v. CECIL E. ANDERSON**

**Direct Appeal from the Circuit Court for Williamson County**
**No. I-900-286     Donald P. Harris, Judge**

───────────────

**No. M2004-02100-CCA-R3-PC - Filed June 16, 2005**

───────────────

The defendant was indicted on one count of aggravated robbery (a Class B felony). Following a jury trial, he was convicted of the lesser included offense of robbery (a Class C felony) and was sentenced as a career offender to fifteen years in the Department of Correction. Upon the grant of a delayed appeal, the defendant challenges: (1) the sufficiency of the identification evidence; and (2) whether his confession was sufficiently corroborated so as to establish the *corpus delicti*. After careful review of the record, the briefs, and applicable law, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the court, in which THOMAS T. WOODALL and ROBERT W. WEDEMEYER, JJ., joined.

Sharon E. Guffee, Franklin, Tennessee (on appeal), and John H. Henderson, District Public Defender (at trial), for the appellant, Cecil E. Anderson.

Paul G. Summers, Attorney General and Reporter; Michael Markham, Assistant Attorney General; Ronald L. Davis, District Attorney General; and Derek K. Smith, Deputy District Attorney General, for the appellee, State of Tennessee.

**OPINION**

Facts

At trial, the victim, Joel Corley testified that he was a junior at Franklin High School, both at the time of the subject incident and at the time of trial. The victim recalled that on August 1, 2000, he made known to several classmates and friends his desire to sell a set of subwoofer speakers. In response, Jermaine Jackson, a classmate of the victim, indicated that he was interested in purchasing the speakers for the victim's asking price of $600. Although Jackson did not have the money at that time, he indicated that he would attempt to get the money and asked the victim to make contact with him via his cellular phone later that day. Throughout the day, the victim made

several calls to Jackson's phone and learned that Jackson was working on getting all of the money together to purchase the speakers. Between 5:00 and 6:00 p.m., the victim traveled to Brandon Bornstein's house to visit, where he again attempted to make contact with Jackson in order to complete the sale. The victim reached Jackson by phone between 11:30 and 11:45 p.m. and learned that Jackson had the money to make the purchase. The two decided to meet at a nearby Texaco gas station, within ten to fifteen minutes, to make the exchange.

The victim stated that he "was a bit uncomfortable" about making the transaction because of the late hour and because he did not know Jackson that well. He further recalled that Bornstein's mother warned both the victim and Bornstein that they should not go. Despite the warning, the young men traveled in separate vehicles to the Texaco station to meet Jackson. The two waited for Jackson for approximately twenty to twenty-five minutes before he arrived. When Jackson pulled up, he was accompanied by an individual identified by the victim as "Chico," also a student at Franklin High School.

The victim stated that he left his vehicle running and opened the rear hatch of his sport utility vehicle to show Jackson the speakers. In turn, Jackson showed the victim the cash that would be used to purchase the speakers. Feeling comfortable with the situation, the victim told Bornstein that he could go back home. As the victim and Jackson looked at the speakers, Chico walked around the side of the building and a third individual, who did not arrive with Jackson and Chico, walked from the back of the gas station toward the front. Shortly thereafter, Chico also returned from the side of the building. The unidentified third person then approached the victim, armed with a knife, and said, "[give me] your stuff or I'm going to stab you." The victim stated that the individual was approximately six feet tall and was wearing long pants, no shirt, and a hat with a small brim around it. He further recalled that the victim smelled of alcohol and that it was apparent that he was under the influence of an intoxicant.

While continuing to hold the knife in his right hand, the perpetrator grabbed the box containing the speakers, which weighed between sixty-five and seventy-five pounds, with his left hand. The man then put the speaker box on the ground and came back toward the victim with the knife. The victim implored Jackson to do something because he felt as if Jackson knew the third party; however, Jackson responded that he did not know what was going on. The victim then got into his vehicle, which had been left running. As the victim sped away, the perpetrator grabbed the victim's amplifier, which was also in the rear of the vehicle.

The victim traveled back to Bornstein's home and informed him that he had been robbed at knife point. The victim then went home, and he and his parents called the police and filed an incident report. At trial, the victim indicated that he initially believed that Jamie Rucker, another student at Franklin High School, had robbed him because the perpetrator resembled Rucker and because Rucker and Jackson were friends. Although the victim knew Rucker from their mutual involvement on the freshman football team at the high school, he had not seen Rucker in the two years since.

The victim testified that, on the day after the incident, a detective with the Franklin Police Department asked him to identify Rucker from the high school yearbook, which the victim did. Several days later, the same detective showed the victim a photo lineup of six individuals, and the victim positively identified the defendant as the man who robbed him. At trial, the victim testified that, while he was unsure at that time if the photo he identified was Rucker, he was "certain" that the person he identified was the individual who robbed him.

On cross-examination, the victim stated that he did not see the defendant in a vehicle on the night of the incident. He further acknowledged that the defendant looked down during the robbery and never made eye contact with him. The victim noted that, although the gas station was closed at the time of the incident, it was "fairly well-lit." He further testified that the defendant was two to three feet from him during the incident and that he held the knife in his right hand while he picked up the speakers with his left hand. Finally, the victim acknowledged that Jamie Rucker's photo was not included in the photo lineup.

Bornstein testified that the victim arrived at his house between 6:30 and 7:00 p.m.on the night of the incident. He stated that he was aware of the victim's attempt to sell his speakers to Jackson and recalled that he was uncomfortable with the victim making the transaction, particularly because it was so late. Bornstein corroborated the victim's testimony that he accompanied the victim to the Texaco station in a separate vehicle. Bornstein testified that Jackson and Chico eventually arrived to meet them and that Chico walked around the building shortly thereafter. At that time, Bornstein stated that he decided to go home after making certain that the victim was comfortable with the situation. He testified that approximately fifteen minutes later, the victim returned to his house and stated that he had been robbed. Bornstein recalled that the victim appeared "shocked" and "scared."

As the final witness at trial, Becky Johnson testified that she was employed as a detective with the Franklin Police Department. Detective Johnson testified that, on the day after the incident, the victim named Rucker as a suspect and also identified Rucker and Jackson in the high school yearbook at her request. Thereafter, Detective Johnson interviewed Jackson and Antwan Brown. She indicated that Jackson's interview led the investigation to the defendant and eliminated Rucker as a suspect. Although an arrest warrant was issued for the defendant, Detective Johnson and others were unsuccessful in locating the defendant to execute the warrant. Detective Johnson was later notified through dispatch that the defendant was in the lobby of the police station. After returning to the station, Detective Johnson was informed that the defendant was there because he knew that the police were attempting to locate him.

Detective Johnson took the defendant to an interview room and informed him of his Miranda rights. After waiving his rights, the defendant conversed with Detective Johnson about the incident for a few minutes and ultimately gave a written statement regarding his involvement in the robbery. The statement reflected that the defendant was present at the Texaco at the time of the robbery; that

he possessed a knife; and that he took the victim's amplifier.[1]  He further stated to Detective Johnson that he sold the speakers to Antwan Brown and that Jackson sold the amplifier.  On August 10, Detective Johnson showed the victim a photo lineup, and the victim identified the defendant as the man who robbed him.  Detective Johnson retrieved the speakers and amplifier from Antwan Brown's vehicle and returned the property to the victim that same day.

On cross-examination, Detective Johnson acknowledged that she did not record the interview with the defendant.  She further testified that Rucker was not a part of the photo lineup.  On redirect examination, Detective Johnson reiterated that she showed the victim the yearbook on August 2, and the photo lineup on August 10.  Finally, she stated that Rucker and the defendant look alike.

Following jury deliberations, the defendant was found guilty of the lesser included offense of robbery.  On appeal, he contends that the identification evidence was insufficient to support the jury's verdict and that his confession was not sufficiently corroborated so as to establish the *corpus delicti*.  Following our review, we affirm the judgment of the trial court.

## Analysis

The defendant first challenges the sufficiency of the identification evidence to support the robbery conviction.  In Tennessee, great weight is given to the result reached by the jury in a criminal trial.  A jury verdict accredits the state's witnesses and resolves all conflicts in favor of the state.  State v. Bigbee, 885 S.W.2d 797, 803 (Tenn. 1994).  On appeal, the state is entitled to the strongest legitimate view of the evidence and all reasonable inferences that may be drawn therefrom.  State v. Elkins, 102 S.W.3d 578, 581 (Tenn. 2003).  Moreover, a guilty verdict removes the presumption of innocence which the appellant enjoyed at trial and raises a presumption of guilt on appeal.  State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973).  The appellant has the burden of overcoming this presumption of guilt.  Id.

Where sufficiency of the evidence is challenged, the relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime or crimes beyond a reasonable doubt.  Tenn. R. App. P. 13(e); Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560 (1979); State v. Abrams, 935 S.W.2d 399, 401 (Tenn. 1996). The weight and credibility of the witnesses' testimony are matters entrusted exclusively to the jury as the triers of fact.  State v. Sheffield, 676 S.W.2d 542, 547 (Tenn. 1984); State v. Brewer, 932 S.W.2d 1, 19 (Tenn. Crim. App. 1996).

In the present case, the defendant challenges only the sufficiency of the identification evidence.  Initially, we note that identification of the defendant as the individual who committed the offense is a question of fact for the jury.  State v. Strickland, 885 S.W.2d 85, 87 (Tenn. Crim. App.

---

[1] Although Detective Johnson testified that the defendant stated that he took both the speakers and amplifier, the written statement reflects that the defendant admitted to taking only the amplifier.  However, either would be sufficient to convict the defendant of robbery.

1993). Moreover, the victim's identification alone is sufficient to support a conviction. Id. The record reflects that the victim was able to see the perpetrator of the offense as the robbery occurred and later identified the defendant as the perpetrator from a photographic lineup. The victim also testified that he was "certain" that the defendant robbed him and identified him again at trial. The State further introduced the defendant's signed statement in which he admitted to robbing the victim.

The jury in the present case accredited the testimony of the State's witnesses and found that the victim properly identified the defendant as the individual who robbed him. We likewise conclude that the identification evidence was sufficient for a rational trier of fact to find the defendant guilty beyond a reasonable doubt. Therefore, we will not disturb the jury's verdict.

Second and finally, the defendant argues that the *corpus delicti* was not sufficiently established by corroboration of the defendant's confession. The *corpus delicti* of a crime may not be established by a confession alone. Ashby v. State, 139 S.W. 872 (1911). The *corpus delicti* of a crime requires that the state prove two elements: (1) that a certain result has been produced, and (2) that the result was created through criminal agency. State v. Ervin, 731 S.W.2d 70, 71-72 (Tenn. Crim. App. 1986). The elements of *corpus delicti* may be established by circumstantial evidence. Id. at 72. Furthermore, the question of whether the state has sufficiently proven the *corpus delicti* is a question for the jury. Id. at 71. "Only slight evidence of the *corpus delicti* is necessary to corroborate a confession and thus sustain a conviction." Id. at 72 (emphasis added).

As we have previously noted, the defendant's confession established that he robbed the victim. However, the defendant's confession was not the sole evidence used to establish the State's case. The victim's testimony corroborated the defendant's statement that he was present at the scene of the incident, that he possessed a knife, and that he took the victim's property. Therefore, the defendant's confession has been sufficiently corroborated so as to establish the *corpus delicti*.

### Conclusion

Upon review, we conclude that the identification evidence was sufficient to support the verdict and that the corpus delicti was sufficiently established by the testimony of the victim, which corroborated the defendant's confession. Therefore, we affirm the judgment of the trial court.

_____

JOHN EVERETT WILLIAMS, JUDGE

-5-