IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

AT JACKSON

OCTOBER 1996 SESSION



**FILED**

**March 24, 2008**

**Cecil Crowson, Jr.**
**Appellate Court Clerk**

| | | |
|---|---|---|
| STATE OF TENNESSEE, | ) | |
| | ) | **C.C.A. NO. 02C01-9510-CC-00326** |
| Appellee, | ) | |
| | ) | **HENRY COUNTY** |
| VS. | ) | |
| | ) | **HON. JULIAN P. GUINN,** |
| **ROBERT LEE BOYD, JR.,** | ) | **JUDGE** |
| | ) | |
| Appellant. | ) | (Second-Degree Murder) |

FOR THE APPELLANT:       FOR THE APPELLEE:


**W. JEFFERY FAGAN**
Asst. District Public Defender
117 Forrest Ave. North
P.O. Box 663
Camden, TN 38320

**CHARLES W. BURSON**
Attorney General & Reporter

**SARAH M. BRANCH**
Counsel for the State
450 James Robertson Pkwy.
Nashville, TN 37243-0493

**ROBERT "GUS" RADFORD**
District Attorney General
P.O. Box 686
Huntingdon, TN 38344

OPINION FILED:_____


**AFFIRMED**


JOHN H. PEAY,
Judge

**O P I N I O N**

The defendant was indicted on November 7, 1994, for the first-degree murder of Lisa C. Stewart. A jury convicted him of second-degree murder and fined him fifty thousand dollars ($50,000). After a hearing, the defendant was sentenced to twenty-five years in the Department of Correction. In this appeal as of right, the defendant contends that the evidence was insufficient to justify a finding of guilt beyond a reasonable doubt. After a review of the entire record, we find that this issue is without merit, and therefore, his conviction is affirmed.

On July 15, 1994, at approximately 2:50 a.m. paramedics from the Henry County Ambulance Service answered a call at 901 McClain Street in Paris, Tennessee. Upon arrival, they saw a large amount of blood on the front porch of the mobile home and rather than enter the home, decided to call for police backup. When the police arrived, they found the victim lying in the doorway to the home. A large pool of blood surrounded her body. The victim was conscious at the time and told the paramedics to "make sure somebody takes care of my children" and that "he did it." The victim made no other statements.

Upon entering the home, police discovered the victim's three young children in a back bedroom. Blood was splattered throughout the home. Officers found blood on the walls, in the hallway, on the kitchen floor, on the bathroom counter, on a towel that had been put in the trash can, in the bedroom where the children were, on living room furniture and on an electric iron. The victim was transported to the hospital where she died a short time later due to loss of blood as a result of incisions to the right forearm and the skull.

After investigating the crime scene, police officers went to the defendant's parents' home where they picked up the defendant for questioning. When he was picked up, the defendant appeared to have blood on his clothing. He was subsequently arrested for the victim's murder.

A defendant challenging the sufficiency of the proof has the burden of illustrating to this Court why the evidence is insufficient to support the verdict returned by the trier of fact in his or her case. This Court will not disturb a verdict of guilt for lack of sufficient evidence unless the facts contained in the record and any inferences which may be drawn from the facts are insufficient, as a matter of law, for a rational trier of fact to find the defendant guilty beyond a reasonable doubt. State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).

When an accused challenges the sufficiency of the convicting evidence, we must review the evidence in the light most favorable to the prosecution in determining whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). We do not reweigh or re-evaluate the evidence and are required to afford the State the strongest legitimate view of the proof contained in the record as well as all reasonable and legitimate inferences which may be drawn therefrom. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978).

Questions concerning the credibility of witnesses, the weight and value to be given to the evidence, as well as factual issues raised by the evidence are resolved by the trier of fact, not this Court. Cabbage, 571 S.W.2d 832, 835. A guilty verdict rendered by the jury and approved by the trial judge accredits the testimony of the witnesses for the State, and a presumption of guilt replaces the presumption of

innocence.  <u>State v. Grace</u>, 493 S.W.2d 474, 476 (Tenn. 1973).

At trial, the State offered into evidence the defendant's taped statement that was taken by the Paris police on the morning of the murder.  In the statement, the defendant said that he and the victim had been living together since 1991, but that he was not the father of the three children.  The defendant said that on the night before the early morning murder, he and the victim had had an argument over money.  He had become angry when he discovered that the victim and some friends had drunk all his beer.  He said he and the victim had begun to fight around 10:15 p.m.  He said he had pushed her, she pushed back; he smacked her, she smacked him; she cut him and he cut her back.

The defendant stated that the victim had cut him with a butcher knife and they had wrestled for the knife.  He further stated that he was not sure where he had cut her but that he knew she was bleeding.  He also said the victim had hit him in the head with the electric iron.  He then stated that he only remembered cutting her on the arm and that he had decided to leave the house and walk to his parents' home to avoid further altercations.  He left the victim, knowing that she was bleeding and knowing that she did not have a telephone to use to call for help.  Once at his parents' home, the defendant asked his mother to send an ambulance to the victim's home.  His mother was evidently reluctant at first, and the defendant and his parents discussed making the call for some time.  Ultimately, the call was placed shortly before 3 a.m.

Dr. Charles Harlan, chief medical examiner for the state, testified that the victim's body had a ten and a half inch incision behind her left ear that cut through the scalp and to the bone.  She had a second incision on her right arm that was six

4

inches in length and cut through the layers of skin and body fat. She also had lacerations on her head and on the bridge of her nose. She had two black eyes. Dr. Harlan testified that she had begun to lose blood immediately upon receiving the injuries. He further testified that from the time she was wounded she could have remained conscious for as little as ten minutes or as much as two hours.

The defendant was examined at East Wood Clinic shortly after giving his statement to the police. Dr. James W. McGee, the emergency room physician, testified that the defendant had had some injuries to his forearm. He stated that the defendant had had three very straight and clean cuts that went through the first layer of skin only. He also had other superficial wounds that looked like scratches. None of the defendant's injuries required stitches. Dr. McGee further stated that because of the nature of the injuries, it was his opinion that the wounds had been self-inflicted.

The State also presented DNA evidence that it was the victim's blood on the defendant's clothing and throughout the house. A DNA analysis of the victim's blood was possible despite the fact that she had received several transfusions of blood in the short time before she died. The State's DNA expert testified that DNA is found in the white blood cells and that because the number of white blood cells in transfusions is small, accurate DNA testing is available. The DNA analysis revealed that the victim's blood appeared on the defendant's t-shirt, his pants, in the bathroom, and on the towel. It also revealed that the blood on the electric iron was not that of the defendant and was most likely that of the victim.

Upon offering this evidence, the State rested. The defendant did not testify nor did he call any witnesses to testify. The jury returned a guilty verdict on the offense of second-degree murder. The defendant now argues that the evidence

presented at trial was insufficient to convict him because of alleged inconsistencies in the State's case. The defendant contends that the uncertainty as to the time the victim sustained her injuries and the fact that the victim could have gone next door to use her neighbor's phone to call for help create inconsistencies such that the defendant's conviction cannot stand. We do not agree.

The defendant admitted that he engaged in a violent altercation with the victim. He admitted to cutting her with a butcher knife and leaving her in her home where there was no telephone despite the fact that he knew she was bleeding heavily. Viewing this evidence in the light most favorable to the State, it supports a conviction for second degree murder. "Although the defendant contends that conflicting testimony was presented at trial, such factual issues . . . are resolved by the jury." State v. Thomas Sinclair, No. 02C01-9503-CC-00066, Madison County, (Tenn. Crim. App. filed April 17, 1996, at Jackson). The jury resolved the inconsistencies against the defendant.

The defendant has failed to meet his burden of illustrating to this Court why the evidence is insufficient to support the verdict returned by the jury. Therefore, the defendant's conviction is affirmed.

_____
JOHN H. PEAY, Judge

CONCUR:

_____
PAUL G. SUMMERS, Judge

_____
DAVID G. HAYES, Judge