IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

AT KNOXVILLE

MARCH 1998 SESSION


FILED

April 2, 1998

Cecil Crowson, Jr.
Appellate Court Clerk

| | |
|---|---|
| STATE OF TENNESSEE, | ) |
| | ) C.C.A. No. 03C01-9704-CR-00153 |
| Appellee, | ) |
| | ) Washington County |
| V. | ) |
| | ) Honorable Arden L. Hill, Judge |
| KELVIN WADE CLOYD, | ) |
| | ) (Vehicular Homicide - 2 counts; |
| Appellant. | )  Possession of a Controlled Substance) |

FOR THE APPELLANT:

H. Randolph Fallin
Attorney at Law
303 West Main Street
Mountain City, TN 37683

FOR THE APPELLEE:

John Knox Walkup
Attorney General & Reporter

Clinton J. Morgan
Counsel for the State
425 Fifth Avenue North
2d Floor, Cordell Hull Building
Nashville, TN 37243-0493

David E. Crockett
District Attorney General

Joe C. Crumley and
Michael LaGuardia
Assistant District Attorneys General
P.O. Box 38
Jonesborough, TN 37659

OPINION FILED: _____

AFFIRMED

PAUL G. SUMMERS,
Judge

**O P I N I O N**

Kelvin Wade Cloyd, the appellant, was convicted of two counts of vehicular homicide and possession of a controlled substance in the Washington County Criminal Court. The issue on appeal is whether the evidence is sufficient to sustain the jury's verdict on the homicide counts. The judgment of the trial court is affirmed.

On October 8, 1995, the appellant was involved in a head-on collision with the victims, Paul Lehew and Charles Garland. The collision occurred on Old State Route 34 in Washington County shortly after midnight. Lehew and Garland were killed instantly.

For the appellant to be found guilty of vehicular homicide, the state had to prove beyond a reasonable doubt that (1) the appellant was intoxicated when he struck the victims' vehicle, and (2) the deaths of the victims were the proximate result of the appellant's intoxication. Tenn. Code Ann. § 39-13-213(a)(2) (Supp. 1995).

The proof showed that, on October 7th, the appellant and Randy Loyd went to Ray's Market (Ray's), a beer store and drinking establishment. They drank beer. Later, the appellant, Loyd, and an employee of Ray's, Glenda Sue Sams, went to a restaurant to eat dinner. They ate dinner and had beer or mixed drinks. They returned to Ray's at approximately 11 p.m. The victims, Lehew and Garland, were at Ray's drinking beer.

Loyd left Ray's before the appellant. Loyd testified that he tried to convince the appellant not to drive because the appellant was not "in good enough shape to drive." Loyd testified that Ms. Sams and the proprietor of Ray's, Laura Prescott, also tried to convince the appellant not to drive. Loyd rode with Lehew and Garland to the appellant's house so that Loyd could get his

vehicle.  Lehew and Garland were supposed to meet Loyd at Loyd's house to go to a party together.  Lehew and Garland never made it.

The appellant plowed head-on into the vehicle occupied by Lehew and Garland.  The appellant was driving a pickup truck.  Lehew was driving a Mazda car.  Lehew's lower body was pinned inside the car.  Garland's body was thrown approximately twenty feet from the car.  The appellant's truck turned on its side. He suffered minor injuries.

Although there were no eyewitnesses to the wreck, a neighbor who lived nearby heard the collision and called 911.  Officer Derek Patton of the Washington County Sheriff's Department was the first to arrive on the scene.  He was joined by Dexter Lunceford and Jeff Anderson of the Tennessee Highway Patrol, Officer Todd Davis of the Washington County Sheriff's Department, and paramedic Christopher Hitechew.  Garland and Lehew were pronounced dead. The appellant was placed in the back of a patrol car.  A plastic bag containing forty-two blue Valium tablets was found in the appellant's pocket.  The accident scene was secured and investigated.  The appellant did not remember anything about the accident.

The primary issues at trial were whether the appellant was intoxicated, and, if so, whether his intoxicated state was the proximate cause of the deaths of the victims.  Dr. Kenneth Ferslew, a forensic toxicologist, testified to the laboratory reports of the appellant and Lehew, the driver of the Mazda car.  The appellant's blood-alcohol level when he was tested after the accident was .06. Dr. Ferslew testified that the appellant's blood-alcohol level at the time of the accident was between .097 and .108.  The appellant also had a blood-level concentration of diazepam or Valium in his system.  Dr. Ferslew testified that the concentration of diazepam in the appellant's blood was in the therapeutic range as opposed to a toxic range.  The therapeutic effects of diazepam include

reduced anxiety, muscle relaxation and sedation. He further testified that mixing alcohol with diazepam would have increased the effects of both drugs on the appellant, causing a greater impairment than either substance alone would have caused. Dr. Ferslew testified that, in his opinion, the appellant would have been impaired from the alcohol and diazepam at the time of the collision.

Paramedic Hitechew testified that he smelled alcohol on the appellant, but that the appellant's demeanor was "normal." Officer Davis testified that the he did not smell a strong odor of alcohol on the appellant, but that the appellant did appear to be under the influence of something. Officer Davis testified that the appellant appeared dazed and confused, that his speech was slow and slurred, and that he was sluggish and slightly unsteady on his feet. Trooper Lunceford testified that he detected a slight odor of alcohol on the appellant, and the appellant appeared to be under the influence of something. Trooper Lunceford testified that the appellant's eyes were glassy and that his speech was somewhat slurred. Trooper Anderson testified that he thought that the appellant was in an intoxicated state.

Lehew's blood-alcohol level was .03. Lehew's blood drug screen was positive for marijuana, cocaine, and a therapeutic level of diazepam. Marijuana was found in Lehew's possession.

The state produced evidence to establish that the appellant's truck crossed the center line on the highway, entered the victims' lane, and collided head-on with the car. The state's reconstruction of the accident was based primarily on gouge marks and scratches in the pavement, the damage to both vehicles, the location of the damage to the vehicles, and debris left at the scene. The defense presented expert testimony to establish that the state's theory was flawed. The expert testified that in his opinion there was no way to tell which vehicle crossed the center line.

The parties stipulated that the headlights on one side of the Lehew vehicle were not operating at the time of the collision. The defense presented evidence from which the jury could have concluded that none of the headlights on the Lehew vehicle were operating. There was evidence that the appellant was speeding at the time of the collision.

When an accused challenges the sufficiency of the convicting evidence, we must review the evidence in the light most favorable to the prosecution in determining whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979). We do not reweigh or re-evaluate the evidence and are required to afford the state the strongest legitimate view of the proof contained in the record as well as all reasonable and legitimate inferences which may be drawn therefrom. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978).

Questions concerning the credibility of witnesses, the weight and value to be given to the evidence, as well as factual issues raised by the evidence are resolved by the trier of fact, not this Court. Id. A guilty verdict rendered by the jury and approved by the trial judge accredits the testimony of the witnesses for the state, and a presumption of guilt replaces the presumption of innocence. State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973). It is the appellant's burden to illustrate to this Court that the evidence preponderates against the guilty verdict in favor of his or her innocence. Id.

The appellant essentially argues that the evidence is insufficient to establish that he was intoxicated, and, that even if he were intoxicated, his intoxication was not the proximate cause of the deaths of the victims. He points to the testimony of the proprietor of Ray's, Laura Prescott, and Ms. Sams who both testified that the appellant did not appear intoxicated at the time in question. The appellant argues that the jury should have believed his expert's opinion that

there was no way to determine which vehicle crossed the center line. The appellant points out that the state's expert was not certified as an accident reconstructionist until after the collision. He argues that the credentials of his expert are better than the credentials of the state's reconstructionist. The appellant also points to the intoxicants found in Lehew's system and the evidence that none of the headlights on the Lehew vehicle were operative.

We reviewed this record thoroughly, paying close attention to the evidence of how the collision occurred. Both the defense attorney and the assistant district attorney did an excellent job of presenting the proof to the jury in this tragic case. It was the jury's duty to decide which witnesses were credible. It was the their duty to determine how much weight to place on particular evidence. There was competent evidence in the record from which the jury could have found that the appellant was intoxicated at the time of the collision, and, that the appellant's intoxication was the proximate cause of the victims' deaths.

The judgment of the trial court is affirmed.

_____
PAUL G. SUMMERS, Judge

CONCUR:

_____
JOHN H. PEAY, Judge

_____
CORNELIA A. CLARK, Special Judge