IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

AT JACKSON

MAY SESSION, 1998

FILED

August 4, 1998

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| STATE OF TENNESSEE, | ) | C.C.A. NO. 02C01-9709-CR-00350 |
| | ) | |
| Appellee, | ) | |
| | ) | SHELBY COUNTY |
| V. | ) | |
| | ) | |
| | ) | HON. W. FRED AXLEY, JUDGE |
| ANTONIOUS J. POOLE, | ) | |
| | ) | |
| Appellant. | ) | (AGGRAVATED ROBBERY) |

FOR THE APPELLANT:           FOR THE APPELLEE:

**MARK L. PITTMAN**             **JOHN KNOX WALKUP**
295 Washington Avenue, #2    Attorney General & Reporter
Memphis, TN 38103

                                   **ELIZABETH T. RYAN**
                                   Assistant Attorney General
                                   2nd Floor, Cordell Hull Building
                                   425 Fifth Avenue North
                                   Nashville, TN 37243

                                   **JOHN W. PIEROTTI**
                                   District Attorney General

                                   **JOHNNY R. McFARLAND**
                                   Assistant District Attorney General
                                   Criminal Justice Center, Suite 301
                                   201 Poplar Avenue
                                   Memphis, TN 38103

OPINION FILED _____

AFFIRMED

THOMAS T. WOODALL, JUDGE

# OPINION

The Defendant, Antonious J. Poole, appeals as of right from his conviction in the Criminal Court of Shelby County. In a single count indictment, Defendant and co-defendant Gary Hunter were charged with aggravated robbery. Following a jury trial, Defendant was convicted of aggravated robbery and Hunter was convicted of theft of property over $1,000.00. In this appeal, Defendant presents the following issues:

> 1) Whether the evidence presented at trial was sufficient to support the conviction for aggravated robbery;
>
> 2) Whether the trial court's redaction of co-defendant Hunter's statement constituted reversible error and whether such redaction compelled the Defendant to testify in violation of his Fifth and Sixth Amendment rights; and
>
> 3) Whether the trial court's failure to sever the co-defendant from the trial constitutes reversible error;
>
> We affirm the judgment of the trial court.

## I. SUFFICIENCY OF THE EVIDENCE

Defendant argues that the evidence was insufficient to find him guilty of aggravated robbery due to the conflicting statements of the witnesses and the jury's erroneous implication of facts which were not proven beyond a reasonable doubt. When an accused challenges the sufficiency of the convicting evidence, the standard is whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319 (1979). On appeal, the State is entitled to the strongest legitimate view of the evidence and all inferences therefrom. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). Because a verdict of guilt removes the presumption of innocence and replaces it with

-2-

a presumption of guilt, the accused has the burden in this court of illustrating why the evidence is insufficient to support the verdict returned by the trier of fact. State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982); State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973).

Questions concerning the credibility of the witnesses, the weight and value to be given the evidence, as well as all factual issues raised by the evidence, are resolved by the trier of fact, not this court. State v. Pappas, 754 S.W.2d 620, 623 (Tenn. Crim. App.), perm. to appeal denied, id. (Tenn. 1987). Nor may this court reweigh or reevaluate the evidence. Cabbage, 571 S.W.2d at 835. A jury verdict approved by the trial judge accredits the State's witnesses and resolves all conflicts in favor of the State. Grace, 493 S.W.2d at 476.

Tauris Nowley, the victim, was at Brenda Tate's home on August 16, 1995, at approximately 10:00 p.m. Tate and Tiffany McClain lived in Tate's home with their children. While Nowley was visiting Tiffany, the Defendant and Hunter arrived. Nowley had met the Defendant on one earlier occasion, but did not know Hunter. Defendant and Nowley had a discussion during which Defendant became angry. After Nowley had been there for twenty (20) minutes, he left and went to his automobile, a blue Chevrolet. Defendant and Hunter were also leaving the house at that time, and Defendant was saying, "I can't let you leave like this." After Nowley got in his car, the Defendant walked to his own car and pulled out a nine millimeter gun.

Nowley started his car and was trying to back up when Defendant pointed his gun at the glass of Nowley's car window towards his face. In fear for his life, Nowley

-3-

stopped the car and cut off the motor. Defendant told him to get out and get on his knees, leaving the car keys in the ignition. Nowley complied, keeping his head down, and was then hit over the back of the head at least twice. During this time, Hunter was standing to Nowley's right on the sidewalk watching. Nowley was lying in the street, about to lose consciousness, when he heard Defendant instruct Hunter to "[G]et his shit." Nowley then lost consciousness. When he regained consciousness, a gold nugget ring, a Masonic ring, his wallet, car and pager were missing.

Tiffany McClain was living with Brenda Tate on Shannon Circle on August 16, 1995. At 10:00 p.m. on that day, Nowley arrived at her home. About ten (10) minutes later, Defendant and Hunter also arrived at her home. While they were all there, McClain saw Defendant and Nowley talking. When they all left, McClain went to the door because she did not hear any car doors shutting. She saw Defendant and Nowley having an argument and then saw them fighting. Nowley went to his car door and Defendant followed. McClain left the room briefly to put her baby down and returned to the front door to watch. Nowley was on his knees with Defendant and Hunter beside him. Hunter got in Nowley's car and pulled off, then Defendant got into his own car and drove away. She and Brenda walked outside to help Nowley. After Nowley regained consciousness, they helped him inside and called the police. McClain admitted during cross-examination that in an earlier statement to the police she stated that she saw Defendant and Nowley fighting and that Defendant had a gun.

Brenda Tate was in her home with Tiffany McClain on August 16, 1995, when Tauris Nowley came by to visit McClain. Shortly after Nowley arrived, the Defendant

-4-

and Hunter also came by. The men began arguing, so Tate asked them to leave. Right after Nowley left, Defendant and Hunter also left. Because Tate believed something was going to happen, she asked McClain to go to the door and watch outside. McClain told Tate that they were fighting. After Tate got outside, she saw Nowley on the ground. Hunter got into Nowley's car and left, then Defendant got into his own car and drove away. Tate and McClain went outside to see if Nowley was alright, then helped him inside and called 911.

David Clark was working for Imperial Security on August 16, 1995, at the Piggly Wiggly supermarket. He saw a blue Chevrolet speeding on the property, then saw the car stop, a man bend over and take a radio out of the car and walk away. He identified this man who took the radio out as Hunter.

Ralph Gillon works for Brewer Imperial, a security company. On August 16, 1995, he received a call for assistance from Clark at the Piggly Wiggly in Winchester Square. A black male had been driving on that property and jumped out of the vehicle. When Gillon arrived at the Piggly Wiggly, he ran in the direction the suspect ran. When Gillon spotted the suspect, he was running and carrying a car stereo system. The suspect kept running and then threw the radio over a nearby fence. When they finally caught the suspect, he was identified as Hunter.

C.G. Gordon was an investigator sergeant with the Memphis Police Department on August 16, 1995. Gordon advised Hunter of his rights and then

interviewed him after he consented to waive his rights. In his statement, Hunter admitted the following:

> I said, I didn't want the car, I just wanted to go home. So I got in the car like a fool and rode down to Piggly Wiggly. And I was scared to death. I almost killed myself. I parked the car on the Piggly Wiggly lot and took the radio out. I was walking off, and the security guard told me to stop. And I kept on walking. Then another security guard pulled a pistol on me and told me to stop and held me there until the police got there.

When asked during the interview if anyone was robbed with a gun during this robbery, Hunter responded affirmatively and stated that a ring, wallet, beeper and blue Chevrolet Impala were stolen.

The State rested its case-in-chief.

The Defendant testified that on August 16, 1995, he went to visit his ex-girlfriend, Tiffany McClain, to check on her. When he and Hunter arrived at her home, it was around 9:30 p.m. Tauris Nowley was already present when Defendant arrived. Defendant, Hunter and Nowley were sitting down, with Defendant and Nowley having a conversation regarding "what had been said against [Defendant]." Their conversation was getting louder and they were using profanity, so Brenda asked them to leave because she had young children. Nowley left first, followed by Defendant and Hunter.

As they left, Defendant and Nowley were still "having words," and this proceeded into a fight. Nowley fell during the course of the fight, then Hunter took some of Nowley's rings off his hand, jumped in Nowley's car and left the scene. Defendant claimed he was so scared that he jumped in his own car and left also. Defendant denied taking anything from Nowley.

-6-

Hunter testified that he accompanied Defendant to visit McClain on August 16, 1995. He did not know Nowley prior to that date. Hunter observed Nowley and Defendant get into a dispute, with Defendant calling Nowley names. Nowley acted like he was scared and told McClain that he was leaving. As Nowley was leaving, Defendant hit Hunter on the leg and exited behind Nowley. Nowley was getting in his car and was preparing to back out when Defendant hit the car and pulled out his pistol. Defendant put the pistol to the window of Nowley's car and told him to "get his black ass out." Nowley got out of the car with his hands up. Hunter got scared and started to panic. While Nowley was getting out of the car with his hands up, Defendant hit him across the head a couple of times with the pistol and Nowley fell to the ground. Defendant kicked him in the head, put the pistol to Nowley's head and told him to raise his hands up in the air. Defendant handed Nowley's beeper to Hunter and told him that he could have the beeper and the car. Hunter was afraid of Defendant because he had already hit one person and might shoot him, so while Hunter was reluctant, he got in the car and drove off. He drove to Winchester Square where he took the radio out of the car and began to walk away.

Aggravated robbery is robbery accomplished with a deadly weapon. Tenn. Code Ann. § 39-13-402(a)(1). Robbery is defined as "the intentional or knowing theft of property from the person of another by violence or putting the person in fear." Tenn. Code Ann. § 39-13-401(a). In the light most favorable to the State, there was sufficient evidence that Defendant used a gun both intentionally and knowingly to threaten Nowley and take various personal property from him, including his car, beeper, wallet and rings. Both the victim and Hunter testified that the Defendant used a deadly weapon to accomplish the robbery, and the identification of a defendant as the person who committed the offense is a question of fact for the jury

to determine. <u>State v. Strickland</u>, 885 S.W.2d 85, 87 (Tenn. Crim. App. 1993)(citations omitted). Nowley's testimony alone identifying Defendant as the perpetrator of this crime is sufficient, in and of itself, to support a conviction. <u>Id</u>. This issue is without merit.

## II. REDACTION OF DEFENDANT'S STATEMENT

Defendant argues that the redacted statements of his co-defendant which were admitted into evidence at trial violated his constitutional rights under <u>Bruton v. United States</u>, 391 U.S. 123, 88 S.Ct. 1620 (1968). Furthermore, the Defendant alleges that by redacting Hunter's statement ineffectively, Defendant was compelled to testify.

In <u>Bruton</u>, the Supreme Court held that the admission of an incriminating statement by a non-testifying co-defendant was prohibited due to the need to preserve the right of an accused to confront witnesses against him. <u>Id</u>. at 136-37, 1628. In the case <u>sub judice</u>, the co-defendant testified at trial, in addition to the submission of his statement into evidence. Defendant had full opportunity to cross-examine Hunter after his testimony, therefore <u>Bruton</u> does not apply. <u>McCracken v. State</u>, 548 S.W.2d 340, 343 (Tenn. Crim. App. 1976).

Defendant further alleges that due to the erroneous introduction of Hunter's redacted statement into evidence, he was compelled to testify. Defendant argues that the redacted version suggests that the Defendant took some of the victim's personal property during the robbery. As the State correctly points out in its brief, the victim of the offense testified to virtually the same events Hunter related within

-8-

his statement. We fail to see how the Defendant was prejudiced by the introduction of this cumulative evidence.

### III. SEVERANCE OF DEFENDANTS

Defendant contends that the trial court erred in refusing to sever his trial from that of Hunter. Specifically, Defendant complains that trying the two together was improper due to the antagonistic defenses which were presented to the jury resulting in prejudice to the Defendant. Prior to trial, Defendant's counsel made a motion to sever the trials of the two defendants based upon their prior statements, but the motion was denied by the trial judge. The issue of severance is addressed to the sound discretion of the trial judge. State v. Wiseman, 643 S.W.2d 354, 362 (Tenn. Crim. App. 1982) (citing State v. Coleman, 619 S.W.2d 112, 116 (Tenn. 1981)). Unless the court's decision clearly prejudiced the defendant, it will not be reversed. Id.

If a defendant moves for a severance because an out-of-court statement of a codefendant makes reference to the defendant but is not admissible against the defendant, the court shall determine whether the state intends to offer the statement in evidence at trial. If so, the court shall require the prosecuting attorney to decide whether to have a joint trial at which the statement is admitted into evidence only after all references to the moving defendant have been deleted, if, as deleted, the confession will not prejudice the moving defendant. Tenn. R. Crim. P. 14(c)(1)(ii).

During the trial, Hunter's statement was redacted such that all references to Defendant were removed. Following the conclusion of the proof, the trial court instructed the jury to consider each defendant's guilt separately. As a result, the jury chose to convict the Defendant of one count of aggravated robbery while convicting Hunter of one count of theft of property. We are satisfied that the instructions given to the jury on the whole clearly informed the jury to consider each defendant's guilt separately. Therefore, we may assume the jury followed the trial judge's instructions. State v. Barton, 626 S.W.2d 296, 298 (Tenn. Crim. App. 1981) (citations omitted).

A severance need not be granted if the evidence used against the Defendant would not have been inadmissible against him at a separate trial, including the evidence derived from the testimony of Hunter. State v. Hammonds, 616 S.W.2d 890, 896 (Tenn. Crim. App. 1981). Even if there had been separate trials for each defendant, the same testimony from the victim and the two bystanders regarding the Defendant's role in the robbery would have been the same. This issue is without merit.

We affirm the judgment of the trial court.


_____
THOMAS T. WOODALL, Judge


CONCUR:

-10-

_____
JOHN H. PEAY, Judge


_____
PAUL G. SUMMERS, Judge