# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

## AT NASHVILLE

### JULY 1998 SESSION



FILED

September 3, 1998

Cecil W. Crowson
Appellate Court Clerk

| | | |
|---|---|---|
| **STATE OF TENNESSEE,** | ) | |
| | ) | C.C.A. No. 01C01-9707-CC-00249 |
| Appellee, | ) | |
| | ) | Rutherford County |
| V. | ) | |
| | ) | Honorable J. S. Daniel, Judge |
| **TYRONE V. TURNER,** | ) | |
| | ) | (Second Degree Murder) |
| Appellant. | ) | |
| | ) | |

FOR THE APPELLANT:

Gerald L. Melton
District Public Defender
201 West Main Street, Suite 101
Murfreesboro, TN 37130

FOR THE APPELLEE:

John Knox Walkup
Attorney General & Reporter

Deborah A. Tullis
Assistant Attorney General
Cordell Hull Building, Second Floor
425 Fifth Avenue North
Nashville, TN 37243

William C. Whitesell, Jr.
District Attorney General
Third Floor, Judicial Building
Murfreesboro, TN 37130

OPINION FILED: _____

**AFFIRMED**

**PAUL G. SUMMERS,**
Judge

**O P I N I O N**

On March 4, 1996, the appellant, Tyrone V. Turner, was indicted for second degree murder for the death of Cory Ward.  On July 26, 1996, he was convicted by a jury of second degree murder and assessed a fine of $40,000. The trial court sentenced him to twenty-two years in the Tennessee Department of Correction and ordered him to serve 100% of his sentence.

The appellant presents three issues for our review:

1. Whether the trial court committed error in denying his requested jury instruction pertaining to second degree murder;

2. Whether the trial court committed error in denying his requested jury instruction pertaining to voluntary manslaughter;

3. Whether the evidence is insufficient, as a matter of law, to prove beyond a reasonable doubt that he is guilty of second degree murder.

After reviewing the record, we affirm the judgment of the trial court.

During the evening of December 9, 1995, the appellant went to Lebanon, Tennessee to pick up Cory Ward, the victim, from his job at Wendy's restaurant. The two drove around for a while, listened to music, and drank beer.  The appellant then drove to Murfreesboro, Tennessee, so that he could introduce Ward to his girlfriend.  He stopped at an Exxon gas station to use a pay phone so that he could answer a page that he had received on his pager.  While the appellant was using the pay phone, Ward went inside the store at the gas station.

After the appellant had finished making his call, he saw Ward arguing with a customer in the store.  The appellant, who had a handgun in his vehicle, disengaged the safety on the gun and put it in his pocket.   He then went inside the store.  Once inside, he determined that Ward was causing a scene with the

manager, Robert Seiffert, and with William Farrar, a regular customer at the store.

The appellant entered the store, grabbed Ward by the arm, and dragged him from the store in order to prevent a fight.  Seiffert, who was on the telephone with the police about the disturbance, told the police to forget about the call when the appellant entered the store to get Ward.  The appellant, who was a frequent customer at the store, apologized to Seiffert for the incident.  The appellant forced Ward into his vehicle, a Geo Tracker, and then drove to the Roses parking lot near the gas station.  The appellant got out of the vehicle and went around to the passenger side of the vehicle, where he engaged in a screaming match with Ward, who was in the passenger seat.  The appellant and Ward began to fight.  Ward ran around to the rear of the vehicle, while the appellant went around the front of the vehicle.  The appellant took his gun from his pocket, raised his arm, and fired the gun at Ward's chest when he reached the driver's side of the vehicle.  Ward was struck by three bullets.

After shooting Ward, the appellant got into his vehicle and left the scene. He drove to his girlfriend's house and hid his vehicle in her backyard.  While driving to his girlfriend's house, he threw his gun out the window of the vehicle. The appellant then called his father to pick him up.  When the police arrived at the appellant's father's house, the appellant was inside.  When the police questioned the appellant about the shooting, the appellant stated that Ward had been shot by someone in a blue car during a drive-by shooting.  However, after further questioning by the police, the appellant admitted that he shot Ward and told the police where his vehicle was parked.

Dr. Charles Harlan performed the autopsy on Ward.  He testified that Ward, who was five feet, nine inches tall and weighed 130 pounds, had a blood

alcohol level of .26. He further testified that Ward received three gunshot wounds, one to the neck and two to the back, from a distance of over two feet.

The appellant argues that the trial court erred in failing to instruct the jury with his special jury instruction regarding second degree murder and voluntary manslaughter and that the evidence is not sufficient to sustain his second degree murder conviction. First, the appellant contends that without his special jury instructions, the jury charge as given shifts the burden of proof to him "to establish an element of the crime of voluntary manslaughter in order to negate an element of the offense of second degree murder." Second, the appellant asserts that he and Ward became involved in an argument immediately before he shot Ward. Therefore, he contends he should have been convicted of nothing more than voluntary manslaughter.

The state argues that the trial court properly instructed the jury and that the evidence is sufficient to sustain the appellant's second degree murder conviction. First, the state asserts that "[b]ecause the record on appeal does not contain either [the appellant's] motion requesting special jury instructions, nor the instructions with which the trial court charged the jury, this issue has been waived." Second, the state contends that the evidence is sufficient to support the jury's verdict of second degree murder. It asserts that the appellant and Ward began to argue and the appellant threw Ward to the ground. When Ward ran to the rear of the appellant's vehicle, the appellant went around the front of the vehicle and to the driver's side of the vehicle. The state maintains that the appellant, who knew that the safety was off and that a bullet was in the chamber, pulled his gun, pointed it at Ward's chest, and pulled the trigger. The appellant left Ward bleeding on the ground as he left the scene to hide his vehicle.

With respect to the appellant's two issues regarding jury instructions, we find it difficult to address these issues without a complete record. Although the

appellant supplemented the record on appeal with a copy of his requested jury instructions, we do not have the jury instructions actually given to the jury by the trial court.  Rule 24(b) of the Tennessee Rules of Appellate Procedure requires the appellant to prepare a record on appeal that presents a complete account of what occurred in the trial court regarding any issue presented for our review. Because we do not have the instructions actually given by the trial court to the jury, this issue is waived.

Second, the appellant was convicted of second degree murder. Tennessee Code Annotated § 39-13-210 (Supp. 1995) defines second degree murder as "[a] knowing killing of another."

Great weight is accorded jury verdicts in criminal trials.  Jury verdicts accredit the state's witnesses and resolve all evidentiary conflicts in the state's favor.  State v. Williams, 657 S.W.2d 405, 410 (Tenn. 1983); State v. Banes, 874 S.W.2d 73, 78 (Tenn. Crim. App. 1993).  On appeal, the state is entitled to both the strongest legitimate view of the evidence and all reasonable inferences which may be drawn therefrom.  State v. Cabbage, 571 S.W.2d 832 (Tenn. 1978). Moreover, guilty verdicts remove the presumption of innocence, enjoyed by defendants at trial, and replace it with a presumption of guilt.  State v. Grace, 493 S.W.2d 474 (Tenn. 1973).  Appellants, therefore, carry the burden of overcoming a presumption of guilt when appealing jury convictions.  Id.

When appellants challenge the sufficiency of the evidence, this Court must determine whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of a crime beyond a reasonable doubt.  Jackson v. Virginia, 443 U.S. 307 (1979); Tenn. R. App. P. 13(e);  State v. Duncan, 698 S.W.2d 63 (Tenn. 1985).  The weight and credibility of witness testimony are matters entrusted exclusively to

the jury as the triers of fact.  State v. Sheffield, 676 S.W.2d 542 (Tenn. 1984);

Byrge v. State, 575 S.W.2d 292 (Tenn. Crim. App. 1978).


The appellant offered several versions of what occurred the night of the

shooting.  At trial, he admitted that he did not have to shoot Ward, but could

have driven away instead.  Also, Dr. Harlan, who performed the autopsy, testified

that Ward received two gunshot wounds to the back.  We, therefore, conclude

that the evidence is sufficient to sustain the appellant's second degree murder

conviction.


Accordingly, we affirm the judgment of the trial court.

_____
PAUL G. SUMMERS, Judge


CONCUR:


_____
DAVID G. HAYES, Judge


_____
JERRY L. SMITH, Judge