# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

## AT NASHVILLE

### APRIL SESSION, 1997

**FILED**

June 6, 1997

**Cecil W. Crowson**
Appellate Court Clerk

| | | |
|---|---|---|
| **STATE OF TENNESSEE,** | ) | **C.C.A. NO. 01C01-9606-CC-00281** |
| | ) | |
| Appellee, | ) | |
| | ) | |
| | ) | **COFFEE COUNTY** |
| **VS.** | ) | |
| | ) | **HON. JOHN W. ROLLINS** |
| **BRIAN L. BRASHEARS,** | ) | **JUDGE** |
| | ) | |
| Appellant. | ) | **(DUI)** |

## ON APPEAL FROM THE JUDGMENT OF THE
## CIRCUIT COURT OF COFFEE COUNTY

FOR THE APPELLANT:

ROBERT S. PETERS
100 First Avenue, S.W.
Winchester, TN 37398

FOR THE APPELLEE:

CHARLES W. BURSON
Attorney General and Reporter

DARYL J. BRAND
Assistant Attorney General
450 James Robertson Parkway
Nashville, TN 37243-0493

C. MICHAEL LAYNE
District Attorney General

STEPHEN E. WEITZMAN
Assistant District Attorney General
P.O. Box 147
Manchester, TN 37355

OPINION FILED _____

AFFIRMED

DAVID H. WELLES, JUDGE

# **OPINION**

This is an appeal as of right pursuant to Rule 3 of the Tennessee Rules of Appellate Procedure. The Defendant, Brian L. Brashears, was convicted by a Coffee County jury of driving under the influence of an intoxicant, third offense, and driving on a revoked license.[1]  The jury fined him $250.00 for each offense and the trial court sentenced him to 11 months and 29 days for driving under the influence with 180 days to be served in the Coffee County Jail and the remainder to be served on probation. His driver's license was revoked for 10 years. The Defendant was sentenced to 30 days for driving on a revoked license, to be served consecutively to the DUI sentence. The Defendant appeals his conviction for driving under the influence of an intoxicant raising one issue: that the evidence was insufficient to support a verdict of guilt. We affirm the judgment of the trial court.

When an accused challenges the sufficiency of the convicting evidence, the standard is whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319 (1979). Questions concerning the credibility of the witnesses, the weight and value to be given the evidence, as well as all factual issues raised by the evidence, are resolved by the trier of fact, not this court. State v. Pappas, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987). Nor may this court reweigh or

---

[1] Tenn. Code Ann. §§ 55-10-401, 55-50-504.

reevaluate the evidence.  State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978).

A jury verdict approved by the trial judge accredits the State's witnesses and resolves all conflicts in favor of the State.  State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973).  On appeal, the State is entitled to the strongest legitimate view of the evidence and all inferences therefrom.  Cabbage, 571 S.W.2d at 835. Because a verdict of guilt removes the presumption of innocence and replaces it with a presumption of guilt, the accused has the burden in this court of illustrating why the evidence is insufficient to support the verdict returned by the trier of fact.  State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982); Grace, 493 S.W.2d at 476.

The State presented the following proof at trial.  On the evening of April 17, 1994, at approximately 9:00 p.m., Charles Holder was returning home via Blanton's Chapel Road in Coffee County.  He noticed headlights approaching him at approximately a quarter of a mile away.  He dimmed his lights because the road curved to the left.  As he approached the turn, the other car was no longer on the road.  Seeing that there was nowhere to turn off the road, Mr. Holder stopped his vehicle and started looking off the side of the road.  A few seconds later, he saw a car off the road.  A man was standing outside the driver's side door with his hands on top of the car.  Mr. Holder directed his headlights towards the scene.  He asked the man, later identified as the Defendant, whether he was alright, if he needed medical attention, and if he needed a tow truck.  The Defendant mumbled answers, which Holder could not understand. He noted that the Defendant's speech seemed slurred and that he appeared unsteady on his

feet. He moved down the side of the car while leaning on it. Holder reported that the Defendant refused help and was reluctant to speak with him.

Holder left the scene, went home, and called his next-door neighbor, Shannon Banks. He told him about the accident because the Defendant had knocked down a portion of Banks' fence. Banks was concerned that the cattle in his field would get out onto the road. Banks called law enforcement and reported the wreck, then proceeded to the scene. He arrived approximately five to ten minutes later. When he arrived, he saw the vehicle off the road, but the Defendant was not there. After another ten to fifteen minutes, Deputy Sheriff Morris Vanattia arrived. Ten to fifteen minutes after that, the Defendant appeared in the field beyond the vehicle. Deputy Vanattia spoke with him.

The Defendant looked confused, and was talking slowly and mumbling. Deputy Vanattia asked the Defendant about the owner and driver of the vehicle. He denied driving the car and stated that his older brother Mike owned the car and was driving it. His brother later arrived on the scene and denied driving the vehicle. The Defendant then confessed that he had been driving. Deputy Vannatia conducted field sobriety tests, which the Defendant failed to complete successfully. He was arrested and taken to the Sheriff's Department, where he was administered a breath alcohol test at approximately 11:00 p.m. It registered a .15% blood alcohol level. The State verified that, at the time the Defendant was driving, his driver's license had been revoked.

The Defendant presented proof that he had left the scene and gone to his brother Scott's house. Scott Brashears testified that the Defendant arrived at his

house shortly after 9:00 p.m., and was upset that he had wrecked his car. He stated the Defendant drank three "Icehouse" beers in approximately twenty minutes. Scott Brashears also admitted that he had previously made a statement in which he stated the Defendant drank two beers. Scott Brashears testified that the Defendant did not appear intoxicated when he arrived at the house, but admitted that he himself had been drinking beer and was himself intoxicated. Therefore, his ability to perceive the Defendant's level of intoxication may have been impaired.

The Defendant testified that his car's tire had a blowout that caused him to run off the road. The Defendant reported that he did not drink anything until he reached his brother's house. He stated that the "Icehouse" beers had a higher alcohol level, thus explaining the .15% reading. He testified that he weighed approximately 135 pounds.

The Defendant contends that the evidence does not support the guilty verdict for driving under the influence of an intoxicant because the State did not prove that he was intoxicated when he was operating his vehicle. The applicable statutes at the time the Defendant was convicted read:

> (a) It is unlawful for any person to drive or to be in physical control of any automobile or other motor driven vehicle on any of the public roads and highways of the state, or on any streets or alleys, or while on the premises of any shopping center, trailer park or any apartment house complex, or any other premises which is generally frequented by the public at large, while under the influence of any intoxicant, marijuana, narcotic drug, or drug producing stimulating effects on the central nervous system.

Tenn. Code Ann. § 55-10-401 (1988).

(b) Evidence that there was, at the time alleged, ten-hundredths of one percent (.10%), or more, by weight of alcohol in the defendant's blood, shall create a presumption that the defendant was under the influence of such intoxicant, and that his or her ability to drive was impaired thereby, sufficiently to constitute a violation of § 55-10-401.

Tenn. Code Ann. § 55-10-408 (1988).

The Defendant was shown to have been driving his vehicle on a public roadway in Coffee County. Charles Holder saw the vehicle approaching him, and very shortly after it left the road, he witnessed the Defendant leaning against the car. Moreover, the Defendant admitted to driving the car. These elements of the offense have been satisfied.

As for whether the Defendant was intoxicated when driving, the State put on proof that he was observed by Mr. Holder to mumble, slur and appear unsteady on his feet just after the wreck. After he returned to the scene, he was unable to perform the field sobriety tests and continued to mumble and slur. The State also showed that the Defendant registered a blood alcohol level of .15% nearly two hours after the accident. This is above the legal limit of .10% and raises a rebuttable presumption that he was intoxicated. The Defendant argues that he was not intoxicated then, but only after he drank beer at his brother Scott's house. The Defendant asserts that the level of alcohol in the beer he drank after the accident supports this finding, yet, whether he drank two or three beers is in question. He also stated that he called his older brother, Mike, to pick up his car. Indeed, Mike Brashears showed up at the scene, corroborating the Defendant's story in part.

However, we cannot reweigh or reevaluate the evidence considered by the jury. <u>Cabbage</u>, 571 S.W.2d at 835. Apparently, the jury chose to credit the testimony of the State's witnesses and resolved any conflicts in its favor. The State presented ample evidence that would support the conclusion that the Defendant was drinking and became intoxicated before he took the wheel of his car.

This issue is without merit. Accordingly, we affirm the judgment of the trial court.

_____
DAVID H. WELLES, JUDGE

CONCUR:

_____
GARY R. WADE, JUDGE

_____
J. CURWOOD WITT, JR., JUDGE