IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs January 18, 2011

**STATE OF TENNESSEE v. FRANCISCO R. LIRIANO**

**Direct Appeal from the Criminal Court for Davidson County**
**No. 2009-D-3566    Mark J. Fishburn, Judge**

_____

**No. M2011-01129-CCA-R3-CD - Filed April 17, 2012**

_____

A Davidson County jury convicted the Defendant-Appellant, Francisco R. Liriano, of conspiring to deliver more than 300 grams of cocaine, a Class A felony. He received a community corrections placement of fifteen years following one year of confinement. The sole issue presented for our review is whether the evidence sufficiently established that Liriano was a knowing participant in the conspiracy. Upon review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which JERRY L. SMITH and JAMES CURWOOD WITT, JR., JJ., joined.

Derrick L. Scretchen, Nashville, Tennessee for the Defendant-Appellant, Francisco Liriano.

Robert E. Cooper, Jr., Attorney General and Reporter; Rachel West Harmon, Assistant Attorney General; Victor S. (Torry) Johnson, III, District Attorney General and John Zimmerman, Assistant District Attorney General, for the Appellee, State of Tennessee.

**OPINION**

**Trial.** In October 2009, the Metropolitan Nashville Police Department began investigating Francisco R. Liriano for his involvement in the drug trade. The investigation resulted from the September 2009 arrest of Marcus Marsh, who had sold cocaine to a police informant on five different occasions and was in possession of 182 grams of powder cocaine, ten grams of crack cocaine, and sixty-nine Xanax pills at the time of his arrest. Marsh told Detective Justin Fox that he had bought cocaine from Liriano numerous times in the past, in quantities up to two kilograms. As part of this investigation, Marsh called Liriano to arrange the purchase of two kilograms of cocaine. In a number of recorded telephone calls that were

played for the jury at trial, Liriano discussed the details of the transaction with Marsh. Liriano referenced getting the cocaine from another person and told Marsh that he could only get one kilogram at the time and would get the other kilogram later. Liriano told Marsh to bring the money for one kilogram, $36,000, to Liriano's house. The two scheduled a time to meet once the cocaine had arrived at Liriano's house.

Marsh went to Liriano's house, equipped with an audio recorder and transmitter, and Liriano let Marsh in the front door. Two other men, later determined to be Jesus Jimenez Olivera and Carlos Rene Corea, a.k.a. Jorge Berly, were there. One of the men went to a bathroom to get the cocaine and brought it out to a table. Liriano took the cocaine and went with Marsh to a bedroom. Liriano cut the package open to show Marsh that the contents were, in fact, cocaine. Marsh put the money on the table, and Liriano picked it up. Marsh then said that he had to go outside to his car to get a bag in which to put the drugs, which was the signal to officers that the transaction had occurred. As Marsh exited the house, Liriano and the two other men went into a back room to count the money.

Officers entered the house and found Liriano in the bedroom. Detective Joe Simonik saw an open package of cocaine, which contained 996.1 grams, on a dresser in the master bedroom. He also saw the bundle of money Marsh had used to buy the drugs on the bed. Officers also found 2.9 grams of cocaine in a small plastic bag in Liriano's pocket.

After Detective Simonik detained Liriano and advised him of his Miranda rights, Liriano confessed his involvement in the transaction. He told Simonik that he called Olivera to get the cocaine for Marsh. Liriano informed Detective Simonik that the house belonged to him and that he had offered it as a meeting place. He said that he was to receive $500 and a "little piece" of cocaine for arranging the transaction.

Following the proof at trial, the jury convicted Liriano of conspiring to deliver more than 300 grams of cocaine. This timely appeal followed.

**Analysis.** Liriano challenges the sufficiency of the evidence establishing that he knowingly participated in the conspiracy. He argues that "he was merely the middle man between his co-defendants and Marcus March." The State responds that the evidence at trial sufficiently proved Liriano's knowing participation in the conspiracy. We agree with the State.

The State, on appeal, is entitled to the strongest legitimate view of the evidence and all reasonable inferences which may be drawn from that evidence. State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997). When a defendant challenges the sufficiency of the evidence, the standard of review applied by this court is "whether, after reviewing the evidence in the

light most favorable to the prosecution, <u>any</u> rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." <u>Jackson v. Virginia</u>, 443 U.S. 307, 319 (1979). Similarly, Rule 13(e) of the Tennessee Rules of Appellate Procedure states, "Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support a finding by the trier of fact of guilt beyond a reasonable doubt." Guilt may be found beyond a reasonable doubt in a case where there is direct evidence, circumstantial evidence, or a combination of the two. <u>State v. Matthews</u>, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990) (citing <u>State v. Brown</u>, 551 S.W.2d 329, 331 (Tenn. 1977); <u>Farmer v. State</u>, 343 S.W.2d 895, 897 (Tenn. 1961)). The trier of fact must evaluate the credibility of the witnesses, determine the weight given to witnesses' testimony, and must reconcile all conflicts in the evidence. <u>State v. Odom</u>, 928 S.W.2d 18, 23 (Tenn. 1996). When reviewing issues regarding the sufficiency of the evidence, this court shall not "reweigh or reevaluate the evidence." <u>Henley v. State</u>, 960 S.W.2d 572, 578-79 (Tenn. 1997). The Tennessee Supreme Court has stated that "[a] guilty verdict by the jury, approved by the trial court, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the prosecution's theory." <u>Bland</u>, 958 S.W.2d at 659 (citing <u>State v. Grace</u>, 493 S.W.2d 474, 476 (Tenn. 1973)). A guilty verdict also "removes the presumption of innocence and replaces it with a presumption of guilt, and the defendant has the burden of illustrating why the evidence is insufficient to support the jury's verdict." <u>Id.</u> (citing <u>State v. Tuggle</u>, 639 S.W.2d 913, 914 (Tenn. 1982)).

Tennessee Code Annotated section 39-17-417 proscribes the knowing delivery of a controlled substance, including cocaine. T.C.A. § 39-17-417(a)(2), (j)(5) (2006). A conspiracy exists when:

> two (2) or more people, each having the culpable mental state required for the offense that is the object of the conspiracy, and each acting for the purpose of promoting or facilitating commission of an offense, agree that one (1) or more of them will engage in conduct that constitutes the offense.

<u>Id.</u> § 39-12-103(a) (2006). This court has described a conspiracy as "an agreement to commit a crime" and has stated that "a conspiracy requires a knowing involvement." <u>State v. Shropshire</u>, 874 S.W.2d 634, 641 (Tenn. Crim. App. 1993) (citations omitted). Liriano contests only the proof of his "knowing involvement" in the conspiracy.

Viewed in the light most favorable to the State, the evidence sufficiently established that Liriano knowingly participated in the conspiracy. Although Liriano claims there was no proof he was aware of the conspiracy, the record demonstrates that Liriano arranged the meeting time between the parties and discussed the details of the sale, including quantity and payment, with Marsh over the telephone. When Marsh arrived at Liriano's house, one of the

-3-

men retrieved the package of cocaine from a bathroom. Liriano took the package from the other man and went to the bedroom with Marsh. Liriano cut the package open to demonstrate to Marsh that the contents were cocaine. Marsh put the money on the table, and Liriano grabbed it. Liriano and the other two men then went to a back room to count the money. After the police entered the house, they discovered the kilogram package of cocaine and the rest of the purchase money in Liriano's bedroom. They also found a quantity of cash in Liriano's dresser drawer and 2.9 grams of cocaine in his pocket. Finally, Liriano admitted to Detective Simonik that he had anticipated payment of $500 and a small quantity of cocaine in exchange for arranging the sale. This evidence sufficiently established that Liriano was a knowing participant in the conspiracy. We conclude, therefore, that the State offered sufficient evidence for any rational trier of fact to find Liriano guilty beyond a reasonable doubt of conspiring to deliver more than 300 grams of cocaine to Marsh. He is not entitled to relief.

_____
CAMILLE R. McMULLEN, JUDGE