FILED

08/28/2018

Clerk of the
Appellate Courts

IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs June 26, 2018

**JOHN PAUL LITTLE v. STATE OF TENNESSEE**

**Appeal from the Criminal Court for Roane County**
**No. 2013-CR-61     Jeffery Hill Wicks, Judge**

_____

**No. E2017-02295-CCA-R3-CD**

_____

The Defendant-Appellant, John Paul Little, was convicted by a Roane County jury of four counts of rape of a child, see Tenn. Code Ann. § 39-13-522, for which he received a sentence of 120 years in confinement.  The sole issue presented in this appeal is whether the evidence is sufficient to support his convictions.  After review, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS and ROBERT H. MONTGOMERY, JR., JJ., joined.

Joshua D. Hedrick, Knoxville, Tennessee, for the Defendant-Appellant, John Paul Little.

Herbert H. Slatery III, Attorney General and Reporter; Renee W. Turner, Senior Counsel; Russell Johnson, District Attorney General; and Alyson H. Kennedy and Robert Edwards, Assistant District Attorneys General, for the appellee, State of Tennessee.

**OPINION**

For roughly four years, the Defendant forced the minor victim, K.W., to engage in various sexual acts including anal intercourse, digital penetration, and oral sex.[1]  The victim reported the abuse to her mother, C.W., in 2012, who then reported it to the police.[2]  Based on the abuse, the Defendant was indicted for the aforementioned charges, and a jury trial was held on December 12, 2017.  We observe at the outset that there is no

_____

[1] It is the policy of this court to refer to minor victims and their family members by their initials.

[2] We refer to the victim's biological mother as her mother in this opinion; however, at the time of trial, the victim had been adopted.

dispute as to the facts presented at trial and the summary of the facts section in the parties' appellate briefs are substantially the same.

The victim, age fourteen at trial, testified that her birthday was December 4, 2002. The Defendant was the boyfriend of the victim's mother, and their seven-year relationship had ended after the victim disclosed the abuse in 2012. The victim was three years old when her mother and the Defendant started dating, and they lived together along with her brothers in a trailer home. When the victim was six years old, they moved into a house on Sevier Avenue in Harriman, Tennessee (the house). The first instance of abuse testified to by the victim occurred when she was nine years old. She and the Defendant were in the basement of the house, and the Defendant forced her to engage in fellatio. She said the Defendant set her on the counter in the basement bathroom and "just made [her] do it[.]" The victim tried to pull away, but he would not let her. The victim said that this was not the first time the Defendant abused her. Although she could not recall the specific date when she told her mother about the abuse, it was about a week after the basement incident.

The victim described a second incident of abuse when she awoke in her bed wearing no pants or underwear and her legs were around the Defendant's neck. She testified that the Defendant was "raping [her]." Asked to explain what she meant by this, the victim said, "I don't know where he put [his penis], but he had it somewhere. I don't mean to be funny or anything." Asked to specify "somewhere," the victim replied, "I don't know how to answer that question." The prosecutor pressed the victim further, and the victim explained that this happened before, and the Defendant would put his penis "either in her mouth or somewhere down there." Asked what she meant by "down there," the victim clarified, "[her] parts" or her "vagina or butt." The victim also knew the Defendant's penis was "down there," because "it hurt." The prosecutor asked the victim specifically how she knew that the Defendant had abused her in this way during the second instance of abuse, and the victim said, "Because [the abuse] was like a regular thing. [She] was just used to it." The victim specified that the abuse occurred, "Maybe like every other night. Sometimes during the day."

The victim recalled a third incident of abuse when there was no running water in her home. The victim testified, "I remember we didn't have any water, so my biological mom got this camping shower and she made [the Defendant] take me out there and help me with it and after I got done with the shower, he made me suck his penis." The victim said the camping shower was set up outside the basement door and that the Defendant forced her to perform oral sex on him on this occasion after she finished the shower, had dried off, and had gotten dressed. She said this incident occurred in the basement. The victim described the Defendant's penis as having "a lot of extra skin on it." She observed that when the Defendant's penis was soft, it had a lot of "extra skin and stuff" and when

it was hard, "[the victim] could see the head." The Defendant would force the victim to "play with" his penis with her hands, and if she moved her hand down, she could see the head and if she moved her hand up, she could not.

When the victim initially told her brother about the abuse, he did not believe her. She told her brother to stay up late one night, and her brother saw the Defendant go into the victim's room then back to bed. Sometime later, after the Defendant had left to stay at his mother's house and with the aid of her brother, the victim told her mother about the abuse. Initially, the victim's mother did not believe her. However, when the victim described the Defendant's penis, her mother started crying. She reported the abuse to the police the next day, and the victim provided a forensic interview to police on August 27, 2012.

The cross-examination of the victim began with defense counsel asking, "I don't know that you necessarily came right out and said it, but [you] testified that [the Defendant] had put his penis in your vagina?" The victim responded, "Yes, sir." She conceded that the forensic interview took place closer in time to the events at issue and that her statements in the forensic interview were likely to be more accurate than her testimony at trial. Defense counsel then began to question the victim regarding statements she made during the forensic interview. The victim confirmed that she said the Defendant "tried to stick . . . his penis, in both sides but it didn't go in at all," and that she denied vaginal and anal penetration by the Defendant. After being played portions of her forensic interview, the victim agreed that she initially said that the Defendant had a tattoo on his belly but later said that she was not sure. Defense counsel then questioned the victim regarding her description of the Defendant's penis and her account of what happened with the skin when she moved her hands up and down.

The victim's mother testified that she had dated the Defendant from 2005 to 2012. They had a sexual relationship, and the victim's mother described the Defendant's penis as having "a lot of skin" at the top, further away from his body. She said the Defendant was not circumcised. When she was told about the abuse, the victim approached her with her oldest son, who said, "Mom, [the victim] has to tell you something." After the victim told her about the abuse, the victim's mother asked the victim to tell her how the Defendant abused her, and the victim put her finger in her mouth and moved it in and out. The victim then touched her private front and back. The victim's mother said after that, she "lost it." After making some phone calls, she and the children moved out of the Harriman house to live with their cousin in another county.

Before the State closed its case-in-chief, defense counsel stipulated to the admission of a portion of the recording of the victim's forensic interview, which was played for the jury. The trial transcript shows that the redacted video of the victim's

forensic interview that was admitted into evidence was approximately 48 minutes in duration. The victim's statements within the interview are largely consistent with her testimony at trial. In addition, the victim details the Defendant's sexual abuse of her from the first time it occurred, which was on a couch in their trailer home when she was five years old. For the next 25 minutes of the interview, the victim describes in graphic detail the first and last incidents of sexual abuse. The interviewer then asked the victim if the Defendant had done anything other than forcing her to engage in oral sex, and the victim said that he tried to put it in "both sides," but she would not let him. At 29:44 minutes in the interview, the interviewer asked the victim if the Defendant had touched her with anything other than his "uh huh," which is how the victim referred to the Defendant's penis, and the victim replied, "[the Defendant] used his tongue and licked the inside," referring to a diagram and her "hole." During this incident, the victim was in her bedroom with her pants down and the Defendant's body was on top of hers. She could not remember the specific date this occurred but said that it happened sometime "in the middle" of the four-year period of abuse.

The Defendant testified and denied the victim's allegations of abuse. He said he had been circumcised his "whole life, since birth."[3] He had several tattoos on both arms and one on his hand, but he did not have any on his belly or on his sides. The Defendant testified that he and the victim's mother had another male acquaintance who had tattoos and occasionally stayed overnight at their home. On cross-examination, the Defendant agreed that he had been in a relationship with the victim's mother since the victim was two years old. Although the Defendant was not the victim's biological father, the Defendant was the only father that she had ever known.

Dr. Thomas Boduch, a general practitioner with over thirty years' experience, testified as a rebuttal witness for the State. During his course of practice, he had encountered medical questions surrounding circumcision. The State had previously provided Dr. Boduch with photographs of the Defendant's penis (purportedly the photographs stricken from the record). Dr. Boduch opined that the penis in the photographs was not circumcised and that the foreskin "had just been retracted back." After extensive cross-examination pertaining to the manipulation of foreskin, defense counsel requested that the doctor physically examine the Defendant's penis. During trial, the parties went to a back room and the doctor examined the Defendant while the jury

---

[3] Photographs of the Defendant's penis were initially admitted into evidence during his testimony. Following the testimony of the State's rebuttal witness, defense counsel moved to strike these photographs from the record, citing ethics rules. The trial court granted the motion and provided the jury with a curative instruction to disregard the previously admitted evidence.

- 4 -

remained seated in court. Following his examination of the Defendant, Dr. Boduch returned and confirmed that the Defendant was not circumcised.[4]

At the conclusion of evidence, the State elected the following offenses and the jury was charged accordingly:

In this case, the State has elected to submit for your consideration the alleged act of Rape Of A Child occurring on the week before the disclosure was made, occurring at the house located on Sevier Avenue, in Harriman, Tennessee, when the defendant had [the victim] perform oral sex on him in the bathroom, in the basement.

Members of the Jury, you are to consider only this alleged act in deciding whether or not the defendant has been proven guilty beyond a reasonable doubt of the offenses charged and included in count one.

In this case, the State has elected to submit for your consideration the alleged act of Rape Of A Child occurring while the defendant lived in the house at Sevier Avenue, in Harriman, Tennessee, when [the victim] [woke] up and found her legs around the defendant and saw his face, and felt his penis in her vaginal or anus.

Members of the Jury, you are to consider only this alleged act in deciding whether or not the defendant has been proven guilty beyond a reasonable doubt of the offenses charged and included in count two.

In this case, the State has elected to submit for your consideration the alleged act of Rape Of A Child occurring while the defendant and [the victim] lived at the house on Sevier Avenue, in Harriman, Tennessee, when [the victim] used the camper shower outside the basement door, after which the defendant made her perform oral sex on him.

Members of the Jury, you are to consider only this alleged act in deciding whether or not the defendant has been proven guilty beyond a reasonable doubt of the offenses charged and included in count three.

In this case, the State has elected to submit for your consideration the alleged act of Rape Of A Child occurring when the defendant and [the

---

[4] Defense counsel also moved for a mistrial and to withdraw from the case and both motions were denied by the trial court.

victim] lived at the house on Sevier Avenue, when he inserted his tongue into [the victim's] vagina.

Members of the Jury, you are to consider only this alleged act in deciding whether or not the defendant has been proven guilty beyond a reasonable doubt of the offenses charged and included in count four.

Following deliberations, the jury convicted the Defendant of four counts of rape of a child as charged in the indictment. The trial court sentenced the Defendant to a consecutive term of thirty years confinement for each count of rape of a child, for a total effective sentence of 120 years in confinement. The trial court also ordered the Defendant to community supervision for life, to register as a sex offender, and to have no contact with the minor victim. On April 12, 2017, the Defendant filed a motion for new trial, which was denied by the trial court on November 20, 2017. This timely appeal followed.

## ANALYSIS

On appeal, the Defendant argues that the evidence presented at trial was insufficient to convict him of rape of a child. Alternatively, he argues that the victim's testimony was too inconsistent to survive the standard of sufficiency of the evidence review. The State contends, and we agree, that the evidence was sufficient to convict the Defendant as charged.

In resolving this issue, we apply the following well-established principles and rules of law. The State, on appeal, is entitled to the strongest legitimate view of the evidence and all reasonable inferences which may be drawn from that evidence. State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997). When a defendant challenges the sufficiency of the evidence, the standard of review applied by this court is "whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979). Similarly, Rule 13(e) of the Tennessee Rules of Appellate Procedure states, "Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support a finding by the trier of fact of guilt beyond a reasonable doubt." Guilt may be found beyond a reasonable doubt in a case where there is direct evidence, circumstantial evidence, or a combination of the two. State v. Matthews, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990) (citing State v. Brown, 551 S.W.2d 329, 331 (Tenn. 1977); Farmer v. State, 343 S.W.2d 895, 897 (Tenn. 1961)). The trier of fact must evaluate the credibility of the witnesses, determine the weight given to witnesses' testimony, and must reconcile all conflicts in the evidence. State v. Odom, 928 S.W.2d 18, 23 (Tenn. 1996).

When reviewing issues regarding the sufficiency of the evidence, this court shall not "reweigh or reevaluate the evidence." Henley v. State, 960 S.W.2d 572, 578-79 (Tenn. 1997). The Tennessee Supreme Court has stated that "[a] guilty verdict by the jury, approved by the trial court, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the prosecution's theory." Bland, 958 S.W.2d at 659 (citing State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973)). A guilty verdict also "removes the presumption of innocence and replaces it with a presumption of guilt, and the defendant has the burden of illustrating why the evidence is insufficient to support the jury's verdict." Id. (citing State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982)).

To convict the Defendant for rape of a child, the State was required to prove the "unlawful sexual penetration of a victim by the defendant or the defendant by a victim, if the victim is more than three (3) years of age but less than thirteen (13) years of age." T.C.A. § 35-13-522(a). Sexual penetration means "sexual intercourse, cunnilingus, fellatio, anal intercourse, or any other intrusion, however slight, of any part of a person's body or of any object into the genital or anal openings of the victim's, the defendant's, or any other person's body[.]" Tenn. Code Ann. § 39-13-501(7).

The Defendant's argument on appeal attacks the sufficiency of the convicting evidence, claiming that it is based solely on the victim's testimony that "she did not know where [the Defendant] put his penis, and that he tried to insert it into her vagina and her butt, however it did not go in at all." Specifically, the Defendant argues that the State failed to establish sexual penetration, an element of the offense. Alternatively, the Defendant makes a sweeping challenge to the victim's credibility, arguing that it is "too inconsistent to survive even the generous standard of sufficiency of the evidence review." In our view, the Defendant's argument focuses solely on an isolated comment the victim made during the forensic interview, which was well after she had already described in detail at least two different encounters of sexual abuse by the Defendant. The Defendant's argument also completely ignores the victim's testimony at trial. Viewing the evidence in the light most favorable to the State, the Defendant raped the minor victim almost every other night over a period of four years. The victim specifically testified as to three instances of sexual abuse by the Defendant. In the first instance of abuse, the Defendant took the victim to the basement, set her on the bathroom counter, and forced her to perform oral sex on him. In the second account of abuse, the victim woke up in her bed with her legs around the Defendant's neck, and he was "raping [her]." Although she could not recall exactly where he put his penis, she explained it happened so frequently that it was either her vagina or butt. In the third account of sexual abuse, when the victim's home did not have running water, the Defendant forced the victim to perform oral sex on him in the basement after she had taken a shower. The fourth incident of sexual abuse, based on the victim's statements in the forensic interview, the Defendant performed oral sex upon the victim in her bedroom.

To the extent that the Defendant challenges inconsistencies in the victim's testimony or her inability to recall specific details regarding the abuse, this court has repeatedly held that the jury is charged with resolving those matters. Here, the jury accredited the victim's account of abuse and rejected the Defendant's denial of the same as was its prerogative. After considering the aforementioned evidence, we conclude that any reasonable trier of fact could have determined that the Defendant engaged in sexual penetration of a minor victim by means of cunnilingus, fellatio, and vaginal intercourse. Accordingly, the record contains sufficient evidence to support the jury's conclusion that the Defendant is guilty of rape of a child as charged in the indictment beyond a reasonable doubt. He is not entitled to relief.

## CONCLUSION

Based upon the foregoing reasoning and analysis, the judgments of the trial court are affirmed.

_____
CAMILLE R. MCMULLEN, JUDGE