IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
May 13, 2025 Session

## STATE OF TENNESSEE v. BRENDAN T. NEGRON

**Appeal from the Criminal Court for Wilson County**
**No. 20-CR-776       Barry R. Tidwell, Judge[1]**

---

### No. M2024-00257-CCA-R3-CD

---

The Defendant, Brendan T. Negron, appeals from his conviction for aggravated domestic assault. Specifically, he contends that evidence adduced at trial was sufficient to establish only a conviction for misdemeanor domestic assault because the barstool utilized in the assault did not constitute a deadly weapon. After review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

KYLE A. HIXSON, J., delivered the opinion of the court, in which J. ROSS DYER and TOM GREENHOLTZ, JJ., joined.

Christopher Beauchamp (on appeal), Lebanon, Tennessee; Shelly Thompson Gardner, District Public Defender; and Aaron M. Rochelle and J. Nicholas Clemmons (at trial), Assistant District Public Defenders, for the appellant, Brendan T. Negron.

Jonathan Skrmetti, Attorney General and Reporter; Richard D. Douglas, Senior Assistant Attorney General; Jason L. Lawson, District Attorney General; and Thomas H. Swink and Justin G. Harris, Assistant District Attorneys General, for the appellee, State of Tennessee.

---

[1] Following the Defendant's trial, the Honorable Michael Collins recused himself from further participation in the Defendant's case. The successor judge listed herein was designated by the presiding judge of the Fifteenth Judicial District to preside over the Defendant's sentencing hearing and motion for new trial. *See* Tenn. R. Crim. P. 25(b)(1).

## OPINION

## I. FACTUAL AND PROCEDURAL HISTORY

A Wilson County grand jury indicted the Defendant on September 16, 2020, for aggravated domestic assault against his wife "by the use or display of a deadly weapon, to wit: a barstool[.]" *See* Tenn. Code Ann. §§ 39-13-102(a)(1)(A)(iii), -111(a)(1). A jury trial took place on August 9, 2022.

The victim in this case, Kelsi Walters, testified that she left the emergency room where she worked as a physician's assistant shortly after 9:00 p.m. on March 18, 2020. She then traveled to a hotel where the Defendant had asked her to stay due to his concerns about her exposing their three young children to COVID-19 following her shift in the hospital. Within an hour of arriving at the hotel, the victim received a call from the Defendant, in which he was "very irate" and screaming that the victim "needed to come home" and that she was a terrible mother for "staying in that work environment" and for placing their "family at risk." Concerned about their children's safety, the victim returned home where the Defendant continued to berate her about her employment and her responsibilities to their children, and he remained "very belligerent" throughout the encounter.

After the victim repeatedly asked the Defendant to "calm down," the argument escalated to physical violence. The victim related,

> there was more exchange of words, and as he was walking away from me, he threw a drum snare [sic] in my direction, threw a wrought iron barstool at my direction, which actually hit me, caused me to fall to the ground, and then he got on the ground and hit my face with a closed fist and said, I should bloody your face so you can't go to work tomorrow. And he said, [i]f you don't leave, I'll kill you, and that's when I left, I got in my car, I locked the door, and I called 911.

The victim later went into greater detail regarding the assault, and her additional testimony was consistent with her initial description:

> He turned around, yeah, turned around toward, walking the opposite direction, and hurled, threw, tossed, whatever you want to say, the, the barstool at my direction. I didn't have time to react, because he probably was only four feet away, and it knocked me down.

. . . .

> I was on the ground after being knocked down, he got down on the ground, had his fist about half-cocked, hit the left side of my face and left a red mark, and said he was going to kill me.

The victim confirmed that the barstool in question was about four feet tall, comprised of heavy "wrought iron" and wood, and a photograph of the barstool was published to the jury. The victim further confirmed that, during this altercation with the Defendant, she was "in fear of injury" and that she was actively in pain following the assault.

During cross-examination, the victim read aloud a letter she had written to the District Attorney's Office on November 24, 2020. In relevant part, the letter stated first that the victim's "story of that night ha[d] not changed, [but she] fe[lt] as though [she] may have [had] some understanding of why it happened." She also maintained that "while [she] had great fear in that moment," she believed the Defendant did as well. She went on to relate her concerns about the Defendant's mental health struggles, which she believed may have been exacerbated by his fear of COVID-19 and the responsibility of caring for their three small children. Based on this belief, the victim related the following: "His reaction of pushing the chair at me was an effort to keep me away from him, according to him. I do not feel that [the Defendant] used the chair as a weapon in attempts to kill or significantly harm me."

The State was then permitted to introduce the victim's statement to law enforcement on the night of the incident to rehabilitate her previous testimony. The victim read this written account of the incident aloud, which included a description of the assault and the threats the Defendant made to her on that night. Both of these written statements were made exhibits to the trial, although the jury was instructed by the trial court not to consider the victim's statement to law enforcement as substantive evidence.

The Defendant testified that he and the victim had a verbal argument on the night in question and that the barstool "was essentially a buffer" between the two of them after the victim returned home. He expressly denied ever having thrown the barstool and stated that he "never picked it up." The Defendant also denied throwing any part of his "expensive drum set" at the victim.

Following its deliberations, the jury found the Defendant guilty as charged in the indictment. A sentencing hearing was conducted on a later date, at which the Defendant

received a sentence of five years to be served on supervised probation. This timely appeal followed the denial of the Defendant's motion for new trial.

## II.     ANALYSIS

On appeal, the Defendant contends that his conviction for aggravated assault should be set aside and a conviction for misdemeanor domestic assault be entered instead. He asserts that he did not use—or intend to use—the barstool to inflict death or serious bodily injury upon the victim and that the evidence introduced at trial was therefore insufficient to support his conviction for aggravated assault with a deadly weapon. *See* Tenn. Code Ann. § 39-13-102(a)(1)(A)(iii). The State responds that the proof introduced at trial was sufficient to establish that the "heavy, wrought-iron" barstool the Defendant used to attack the victim qualified as a deadly weapon.

The United States Constitution prohibits the states from depriving "any person of life, liberty, or property, without due process of law[.]" U.S. Const. amend. XIV, § 1. A state shall not deprive a criminal defendant of his liberty "except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). In determining whether a state has met this burden following a finding of guilt, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). Because a guilty verdict removes the presumption of innocence and replaces it with a presumption of guilt, the defendant has the burden on appeal of illustrating why the evidence is insufficient to support the jury's verdict. *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982). If a convicted defendant makes this showing, the finding of guilt shall be set aside. Tenn. R. App. P. 13(e).

"Questions concerning the credibility of witnesses, the weight and value to be given the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact." *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997). Appellate courts do not "reweigh or reevaluate the evidence." *Id*. (citing *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978)). "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." *State v. Grace*, 493 S.W.2d 474, 476 (Tenn. 1973). Therefore, on appellate review, "the State is entitled to the strongest legitimate view of the trial evidence and all reasonable or legitimate inferences which may be drawn therefrom." *Cabbage*, 571 S.W.2d at 835.

As pertinent to this case, aggravated assault occurs when a person "[i]ntentionally or knowingly commits an assault" and the assault "[i]nvolved the use or display of a deadly weapon." Tenn. Code Ann. § 39-13-102(a)(1)(A)(iii). A person commits assault who "[i]ntentionally or knowingly causes another to reasonably fear imminent bodily injury." *Id.* § -101(a)(2). "Bodily injury" includes "a cut, abrasion, bruise, burn or disfigurement, and physical pain or temporary illness or impairment of the function of a bodily member, organ, or mental faculty." *Id.* § -106(a)(3).

Deadly weapons may be placed into two categories—deadly *per se* or deadly by reason of the manner in which they are used. *Morgan v. State*, 415 S.W.2d 879, 882 (Tenn. 1967). A deadly weapon *per se* includes "[a] firearm or anything manifestly designed, made or adapted for the purpose of inflicting death or serious bodily injury. *Id.* § 39-11-106(a)(6)(A). A deadly weapon by manner of use includes "[a]nything that in the manner of its use or intended use is *capable* of causing death or serious bodily injury." *Id.* § -106(a)(6)(B) (emphasis added). Our supreme court has clarified that, in cases that do not involve a deadly weapon *per se*, the item "will only be considered a deadly weapon if the defendant in a particular case actually used or intended to use the item to cause death or serious bodily injury." *State v. McGouey*, 229 S.W.3d 668, 674 (Tenn. 2007). "Serious bodily injury" means, in pertinent part, bodily injury that involves a substantial risk of death, protracted unconsciousness, extreme physical pain, protracted or obvious disfigurement, or protracted loss or substantial impairment of a function of a bodily member, organ or mental faculty. *Id*. § -106(a)(36).

There is no dispute in this case that a barstool is not a deadly weapon *per se*; the parties merely disagree on whether sufficient evidence was put before the jury to establish the Defendant's intended use of the barstool in a manner that made it a deadly weapon at the time of the assault. In support of his argument, the Defendant relies on *McGouey*, wherein the defendant brandished an unloaded pellet gun at officers from across a large field. 229 S.W.3d at 670-71. Our supreme court held that the evidence was insufficient to support the defendant's conviction for aggravated assault by use or display of a deadly weapon because there was no evidence that the defendant used or intended to use the unloaded pellet gun in a manner that would render it capable of causing death or serious bodily injury. *Id*. at 669. However, importantly, a heavy piece of furniture—such as the barstool in the instant case, which was four feet tall and comprised of heavy "wrought iron" and wood—is "capable" of causing death or serious bodily injury as contemplated by the statute. *See* Tenn. Code Ann. § 39-11-106(a)(6). As such, although neither involved a deadly weapon *per se*, this case is distinguishable from *McGouey*.

- 5 -

Moreover, a defendant's intent may be proven by circumstantial evidence, including verbal threats made to the victim during the assault. *State v. Phillips*, No. M2009-02320-CCA-R3-CD, 2011 WL 2174909, at *3-4 (Tenn. Crim. App. May 31, 2011) (holding that the metal folding chair the defendant struck the victim and surrounding objects with, coupled with his verbal threats, constituted "clearly sufficient proof" that the chair was a deadly weapon as contemplated by *McGouey*). Viewing the evidence in the light most favorable to the State, we conclude that a rational juror could have reasonably found that the Defendant intended to cause death or serious bodily injury when he "hurled" a wrought iron barstool at the victim from only a few feet away. The jury's finding of guilt in this case is supported by the additional evidence that the Defendant did so after having failed to hit the victim with his drum equipment and while verbally berating her. Once the victim was on the ground, the Defendant proceeded to hit her in the face with his fist and threatened to kill her. The victim stated that she "had great fear in that moment[.]"

The jury also heard the Defendant's account of the incident and rejected it, as was its province. *See Grace*, 493 S.W.2d at 476. The jury was likewise free to disregard all, none, or any part of the victim's testimony, including the letter she wrote to the District Attorney's Office, or to simply consider the letter as expressing the victim's own belief, not the Defendant's actual intent. The jury, as the trier of fact, determines the weight and value to be given to the evidence, and we do not reevaluate its findings. *See Bland*, 958 S.W.2d at 659; *Cabbage*, 571 S.W.2d at 835. The Defendant is not entitled to relief.

## III.    CONCLUSION

Based upon the foregoing and consideration of the record as a whole, we affirm the judgment of the trial court.

 s/ Kyle A. Hixson
KYLE A. HIXSON, JUDGE

- 6 -